A92A1504. FEISE et al. v. CHEROKEE COUNTY et al.
(427 SE2d 294)

BIRDSONG, Presiding Judge.

Plaintiffs Cynthia Mary Feise and Jonathan Feise appeal the grant of summary judgment to defendants Cherokee County and John Seay as sheriff and individually. The Feises filed suit for damages after Mrs. Feise, holding her two-year-old son, was attacked and "sliced" repeatedly with a knife by a neighbor, Scott Kramer, whom the Feises' teenaged daughter and a teenaged neighbor had identified as the peeping tom who had plagued them. The Kramer house was behind the Feises' home. After reports of a recurrence of peeping tom incidents following Kramer's return from military service, deputies placed the Feises' and their neighbor's houses on extra patrol. Deputy Shields made special patrols, even going into the backyards to see

how he would chase someone and shining spotlights into the yards. In July 1990, Deputy Shields told Deputy Hall he feared the incidents would escalate to a rape situation. One night Deputy Shields saw a figure jump off the Feises' deck; he gave chase; when Deputy Hall came on duty, he resumed the search and Kramer was picked up on a road near his house. Deputy Hall sought to have the Feises and their neighbors identify Kramer. Construing the evidence on defendants' motion for summary judgment most favorably to the Feises (*Holland v. Sanfax Corp.*, 106 Ga. App. 1, 4 (126 SE2d 442)), their teenaged daughter and her friend were very upset to be asked to identify Kramer; they knew his reputation for bizarre and cruel behavior and were afraid. They agreed to identify Kramer only upon the deputy's promise that Kramer would not get out of jail. When the girls, relying upon this assurance, went outside and identified Kramer as the peeping tom, Kramer winked at them and said he would be back. He was mistakenly charged with a misdemeanor and was out on bail in one-and-one-half hours.

Six weeks later, Mrs. Feise, on September 4, 1990, received a telephone call from a male who said: "I'm going to carve you and your daughter . . . up." The caller hung up quickly and Mrs. Feise called the operator to trace the call. Meanwhile, the caller called again on the call waiting line and said: "I'm going to get you all for what you did." Mrs. Feise received three threatening calls in a row. She assumed these calls were made by Kramer, because "who else wanted to do us harm?" The calls sounded as if they were made from a pay phone but the caller hung up before the calls could be traced. Deputies checked nearby stores and phone locations but found nothing. The neighbors also received a similarly threatening call that day. Mr. and Mrs. Feise sought to have Kramer arrested, but the sheriff's office and the district attorney told them there was no probable cause to arrest because the calls were not traced. It was suggested that the Feises get a warrant, but the Feises did not see how they could get a warrant if the police did not have probable cause to arrest.

Construing the evidence most favorably to the Feises (id.), despite the "extra" patrols expended by the deputies before the threats of revenge were received, and despite the deputies' heightened knowledge of Kramer's dangerous propensities, after the threatening phone calls were made the sheriff did nothing to help the Feises. They were left to their own devices. The threats made by Kramer as the only person with a motive to "get you all for what you did," were so frightening and posed a threat of such imminent harm that the next day Mr. Feise, who is a probation officer and former policeman, did not go to work but stayed with his family. During the day, however, it was necessary for him to go to the pharmacy. He gave his wife a gun and told her not to go outside without it, but she knew she could not

shoot anybody and she did not think anything would happen in broad daylight, so she took her two-year-old son outside to the mailbox.

Scott Kramer had been stalking the house or lying in wait. He approached Mrs. Feise and slashed her repeatedly with a knife. He slashed her deeply on her arm when she flung it up to protect herself. She picked up her son and turned to run and Kramer repeatedly slashed her on her back. She managed to get away, but she and her baby were covered in blood and have suffered a great deal emotionally as the result of the slashing.

Sovereign immunity is not in issue. The trial court granted summary judgment to defendants. Plaintiffs Cynthia Feise and Jonathan Feise appeal. *Held*:

This court recently debated the basis for liability of law enforcement agencies and municipalities for failure to protect an individual from the criminal acts of a third party, in *Jordan v. City of Rome*, 203 Ga. App. 662, 667 (417 SE2d 730) (cert. granted). That decision was not concurred in by a majority of this court so it is physical precedent only. See Court of Appeals Rule 35 (b).

The trial court correctly granted summary judgment to defendants on the claim that defendants negligently induced the two girls to identify Scott Kramer by promising he would never get out of jail. Plaintiffs could not reasonably rely upon any such assurance, nor was the failure of such promise the proximate cause of Kramer's attack. Nor does liability attach to defendants for finding lack of probable cause to arrest Kramer after Mrs. Feise and her neighbor received threatening phone calls. See *Ferguson v. City of Doraville*, 186 Ga. App. 430, 432 (367 SE2d 551).

However, in view of the deputies' heightened apprehension that Kramer was of definite criminal propensity, and their having been advised that plaintiffs and their neighbors had suddenly received four viciously threatening telephone calls in one day, questions of fact exist as to defendants' duty to protect the Feise family against this imminent specific danger, by decoy or by surveillance or stake-out of their house or by some other means. The jury may find that defendants should reasonably have presumed the person who made four threatening telephone calls on one day was Scott Kramer, and that defendants should reasonably have inferred that Kramer had conceived an overwhelming and immediate desire and intent to take revenge and "slice" certain members of plaintiffs' family; and that defendants did not exercise ordinary care to protect the Feise family from Kramer's immediate assault.

The trial court erred in granting summary judgment to defendants, either under the imposition of a duty to exercise reasonable care as held by the plurality in *Jordan*, or under the *Jordan* dissent, which relied upon a "special duty" analysis in the particular circumstances

of that case. *Jordan* involved a call to police and an asserted promise by police to send assistance. The majority found evidence giving rise to a duty to exercise ordinary care, but the dissent believed the information relayed to the police by Jordan's · sister was so exceedingly sparse that there was no basis to impose a duty to exercise ordinary care based on knowledge of a foreseeable risk of harm. The dissent also found that no "special duty" arose in that case on grounds that the plaintiff "justifiably relied" on the defendant's "affirmative undertaking" to protect or assist the plaintiff, because "[b]ased on the sparse information imparted to the police by phone, there is no basis to find the police had knowledge that the failure to send a car could lead to the harm incurred. There is no evidence that the police inaction made the situation worse or increased the danger to Jordan." *Jordan* at 673.

The element of "justifiable reliance" on an "affirmative undertaking" by the law enforcement agency under a special duty analysis arose because Jordan contended police promised to send assistance and she relied on that promise. A failure of affirmatively assumed duty to protect, and the plaintiff's reliance on it, may be the cause of damage in some cases (see *Thomas v. Williams*, 105 Ga. App. 321, 326 (124 SE2d 409)), but this "justifiable reliance" requirement should not be applied to cases which do not involve reliance on an affirmative undertaking to protect. See, e.g., *Jordan* at 665, fn. 1. Neither should plaintiffs confuse their chances by arguing that liability arose out of a "special duty" where, as here, there is no evidence the plaintiff's reliance on an affirmative police undertaking is what resulted in her harm.

The element of "justifiable reliance" based on a "special duty" does not arise under the causation evidence in this case. This obviously means the "special duty" analysis is not applicable to this case and we have not applied it in this case, as expressly stated above. Therefore, contrary to the special concurrence in this case, we have not applied to this case the "special duty" analysis, as we have expressly made clear. The facts in this case are far more compelling than those in *Jordan* toward a duty to exercise ordinary care where the law enforcement agency knew or should have known that its acts or omissions exposed an individual to the risk. The Feise family was so convinced Kramer intended an immediate assault that Mr. Feise stayed home from work and tried to fortify his family in their home with a gun; but defendants, having knowledge of the pertinent facts, left the family to their own devices and made no effort to guard against or draw out this attack which the Feises foresaw as an immediate danger.

That Mrs. Feise went outside her home without a gun does not as a matter of law bar recovery, nor does it relieve defendants of a duty

which a jury may find existed. Citizens are not required to carry, and use, a gun as a matter of law. Mrs. Feise stated she could not shoot anyone; the victim of Kramer's attack could have been a child or a person incapable of understanding the danger of using a gun to protect herself. An element of plaintiffs' case is that Mrs. Feise should not have been forced to be imprisoned in her home or else shoot Scott Kramer, or more than her physical security would be at continuing risk as a result of the failure of defendants to protect her, assuming a jury finds they had such a duty in all the circumstances of the case.

The dissent clings to the principle outlined in the dissent in *Jordan*, supra, that is, that defendants may be liable only if they had a duty in terms of a "special relationship" which was created between the claimant and police sufficient to establish a specific duty for the police to protect the claimant from particular harm. The dissent asserts that whether there is a "special duty" is a question of law for the court in each case. However, when the very complaint is that defendants *should* have undertaken a duty in the circumstances, an analysis barring recovery if a court finds that no duty existed because the defendants undertook no such duty, is circular and self-defeating. This complaint is bottomed on defendants' failure to assume a duty to protect against reasonably foreseeable imminent danger from Kramer; if defendants' failure to undertake such duty bars recovery as a matter of law, this is the same as saying no duty exists unless defendants undertook a duty to protect. The result of this reasoning is that a police agency can always make itself immune from liability simply by failing to act, and only in cases of wilful or criminal dereliction by police could a court decide there was a duty on police to protect. Carried to its logical end, such "special duty" analysis is thus shown to be inappropriate to the circumstances of these cases, except where police did in fact indisputably undertake the duty to protect.

The dissent creates a form of police immunity, by making a finding of fact that should be made by a jury. The cases cited for the idea that the existence of a duty is an issue of law for a court (*Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) and *First Fed. &c. Bank of Brunswick v. Fretthold*, 195 Ga. App. 482, 485-486 (394 SE2d 128)) do not support that proposition. *First Federal &c. Bank of Brunswick* stems from *Shockley v. Zayre of Atlanta*, 118 Ga. App. 672 (165 SE2d 179), which actually held: " 'The [question of] duty is defined by the law; the breach of that duty is determined by the particular facts. . . . *This is usually a question to be referred to the jury, and should always be so referred, unless the allegations (or evidence) show beyond controversy that there was no such breach of duty. . . .*' [Cits.]" (Emphasis supplied.) Id. at 673. Therefore, *Shockley* cannot be used as the basis to allow the court to decide whether police had a duty in these cases. As said above, a "special

duty" analysis is generally appropriate only where there was an affirmative undertaking to protect. It is not a term to be used to allow a court to decide at the threshold, in every case, whether a danger was reasonably foreseeable by police. A court may decide the issue only if the evidence shows "*beyond controversy*" (id.) that there was no reasonable foreseeability of danger giving rise to a duty, under general principles of negligence law and summary judgment procedure.

The dissent concedes the question is one of reasonable foreseeability, but, calling this a "special duty" question, contends that the trial court had the right to decide it. If a form of police immunity is desired, the legislature should enact it, and a peculiar judicial analysis should not be used to create police immunity by allowing a court at the threshold to decide the factual issue of what is reasonably foreseeable. Serious policy considerations abound in these cases, but the standard of reasonable foreseeability is generally sufficient to the query. The question what is "reasonable" necessarily asks what is reasonable to the police in *all the circumstances and exigencies*. The jury of peers is not unequipped to consider this question. If, to the reasonable minds of 12 jurors, all the circumstances in a particular case imposed a duty on police to "provide personal 24-hour protection to citizens under these or like circumstances" or some other proper form of surveillance (as the dissent fears), we will not hold this to be inappropriate, in view of the constitutional guarantee of "protection to person and property" noted in the special concurrence in *Jordan v. City of Rome*, supra at 669 (Ga. Const. 1983, Art. I, Sec. I, Par. II), in the absence of a legislatively enacted special police immunity.

Furthermore, in concluding that the circumstances were not sufficient to inform defendants of a "substantial likelihood" of immediate risk of danger from attack, the dissent attempts to create a higher standard of proof by which these cases should be judged. Making the issue one of "substantial likelihood" rather than "reasonable foreseeability" really adds nothing to the inquiry, since if a danger was reasonably foreseeable it must be concluded in legal terms that there was a "substantial likelihood" of it. But if "substantial likelihood" were used to supplant traditional negligence law and to require a sort of "certain foreknowledge," it will create police immunity except for wilful torts.

As to the dissent's conclusion that there was no duty because these factual circumstances did not inform defendants of the "substantial likelihood" of this particular imminent danger, obviously this cannot be said as a matter of law, for the issue is not "beyond controversy" (id.) *inasmuch as the jury, like Mr. Feise on the day of the attack, may come to the opposite conclusion*. Where reasonable minds may differ as to the foreseeability of Kramer's attack, the question is necessarily one for the jury.

A jury may find in this case that defendants had a duty to exercise ordinary care to protect plaintiffs from the criminal acts of Scott Kramer because it was reasonably foreseeable to defendants that this attack would occur and defendants knew or should have known their acts or failure to act exposed plaintiffs to the risk. The trial court erred in granting summary judgment to defendants.

*Judgment reversed. McMurray, P. J., and Cooper, J., concur. Beasley, J., concurs in judgment only. Sognier, C. J., Carley, P. J., and Johnson, J., concur specially. Andrews, J., dissents. Pope, J., disqualified.*

SOGNIER, Chief Judge, concurring specially.

I concur fully as to that part of the majority's opinion extending to counties the duty first recognized by a plurality of this court in *Jordan v. City of Rome*, 203 Ga. App. 662, 666-667 (2) (417 SE2d 730) (1992) that a municipality owes persons within its municipal boundaries a duty to exercise ordinary care to protect them against the intentional and unpredictable criminal acts of third parties when it reasonably knew or should have known that its acts or omissions exposed those persons to a foreseeable risk of harm. As with municipalities, counties assume this duty as an inherent power of government. See Ga. Const. 1983, Art. IX, Sec. II, Par. III (a) (1). I concur fully as to that part of the majority's opinion holding that summary judgment to appellees was improper because questions of fact exist whether such a duty arose as to appellees in regard to appellants.

I concur in judgment only as to that part of the majority's opinion analyzing the facts of the case sub judice in light of the "general duty/special duty" analysis in the *Jordan* dissent. To the extent the majority's opinion intimates that that analysis may be appropriate in other cases or is otherwise applicable in Georgia, I concur in judgment only because I agree with the plurality in *Jordan* that application of that analysis contravenes statutory and constitutional language in Georgia authorizing the waiver of governmental immunity to the extent of applicable liability insurance coverage. Id. at 664-666 (1).

I am authorized to state that Presiding Judge Carley and Judge Johnson join in this special concurrence.

ANDREWS, Judge, dissenting.

I concur in the holding that the trial court correctly granted summary judgment on the claim that the defendants negligently induced an identification of Kramer. I respectfully dissent from the majority's conclusion that the trial court erred in granting summary judgment to the defendants on the claim that Cherokee County and its sheriff negligently failed to protect Mrs. Feise from Kramer's attack.

One of the functions of government is to provide police protec-

tion for citizens within its jurisdiction. Thus, the police have a general duty to protect citizens from criminal attack by third persons, whereas a private individual generally has no affirmative duty to aid the victim of such an attack. Nevertheless, the general governmental duty to protect the public is not alone a sufficient basis to support a tort action against the government for failure to protect its citizens from harm caused by a third party's assault or other criminal activity.

When a claim is made that police negligently failed to protect a member of the public, the threshold issue is whether in the exercise of this general duty, a special relationship was created between the claimant and the police sufficient to establish a specific duty for the police to protect the claimant from the particular harm. See *Jordan v. City of Rome*, 203 Ga. App. 662 (417 SE2d 730) (1992) (Andrews, J., dissenting) (cert. granted). "[I]n the context of a tort claim that the [county's] police negligently failed to furnish police protection to [Mrs. Feise], the application of a duty limited in scope by the type of relationship between the claimant and the [county] police is a traditional tort law concept applicable to both government and private entities." Id. at 671-672. In general, A has no duty to prevent B from harming C, unless A has a special relationship with B which imposes a duty on A to control B, or a special relationship exists between A and C which gives C a right to protection. *Associated Health Systems v. Jones*, 185 Ga. App. 798, 801 (366 SE2d 147) (1988); Restatement, Law of Torts 2d, § 315.

Limiting the scope of the government's duty under these circumstances is not a resurrected form of sovereign immunity, otherwise waived to the extent of insurance coverage, but involves a question of law on the threshold tort issue of duty. See generally *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982) (setting forth "a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm" as the threshold element in a cause of action for negligence). Ultimately, defining the scope of legal duty in any setting involves unavoidable policy decisions. In cases of the present kind, it is proper to some degree to consider the unique functions undertaken by government in providing police protection, and the limited resources allocated to the performance of these functions. The duty analysis undertaken in these cases, however, is not based on any special status given to government, but on the same tort principles which would be applied to private individuals in like circumstances. The task is to fairly apply traditional duty analysis to the often unique circumstances presented by tort claims for negligent failure to perform a governmental function. Limiting the scope of duty in terms of the relationship between the plaintiff and defendant is not a novel concept. In premises liability actions the duty owed by the owner of the premises to one enter-

ing varies according to whether the relationship to the owner of the one entering is that of trespasser, licensee or invitee. See Adams & Adams, Georgia Law of Torts, § 4-1 (1989).

It is reasonable, therefore, to limit the scope of the legal duty imposed on police for claims that they negligently failed to provide protection. When police know, or reasonably should know, that there is a substantial likelihood a particular citizen is in immediate danger of being subjected to an unreasonable risk of serious physical harm by the actions of a third person, this is sufficient to create a special relationship giving rise to a specific duty for the police to exercise reasonable care to protect the citizen from the harm.[1] Whether a special relationship giving rise to a specific legal duty exists under the peculiar facts of each case is generally a question of law for the court. See *First Fed. &c. Bank of Brunswick v. Fretthold*, 195 Ga. App. 482, 485-486 (394 SE2d 128) (1990) (while issues of negligence are ordinarily for the finder of fact, the question of duty is for the court). In the absence of such a duty, the defendant is not liable; if such a duty does exist, the issue of negligence is for the trier of fact.

An argument may be made that by framing the trial court's duty analysis in general terms of a special relationship and foreseeable risk, this duplicates part of the factfinding process that is normally reserved for the jury in negligence cases. However, given the unique function of providing police protection for the general public, the limited resources given to perform the task, and the potential for limitless numbers of negligence claims, it is necessary to clearly address the scope of the duty before exposing the police to potential liability for breach of such duty. Nevertheless, when duty is defined in terms of a special relationship between the plaintiff and defendant, its existence or non-existence will be based on the facts of the case. The special relationship-duty question is a threshold issue, and should be resolved by the court as a matter of law where the facts support such a determination. See *Trammell v. Baird*, 262 Ga. 124, 125 (413 SE2d 445) (1992) (plaintiff had relationship of trespasser as a matter of law). Where the trial court is unable to conclude as a matter of law whether or not a special relationship existed, it properly becomes a factual question for resolution by the jury along with other negligence issues. See *Murray Biscuit Co. v. Hutto*, 119 Ga. App. 377, 385-386 (167 SE2d 182) (1969) (question of fact as to whether plaintiff stood in relationship of trespasser or licensee).

After Kramer was identified by the Feises' daughter and a neighbor's daughter and arrested on peeping tom charges, he was released

---

[1] I agree with the majority that the four-part test for establishing a special relationship set out by the dissent in *Jordan v. City of Rome*, supra, was sufficient under the facts of that case, but not here.

from custody the same day. About six weeks later, Mrs. Feise and her neighbors received anonymous threatening phone calls. Kramer was not identified as the caller, although Mrs. Feise feared that it was him because she knew of no one else who would have a motive to harm them. The calls sounded as though they were made from a pay phone, but police were unable to locate the caller by checking local stores and phone locations. The police were unable to arrest Kramer for lack of probable cause.[2] The next day Kramer assaulted Mrs. Feise in front of her residence.

In my view, no special relationship existed as a matter of law between the police and the plaintiffs in this case, therefore the police had no specific duty to prevent the harm. There was no claim that Kramer had previously assaulted the plaintiffs, nor was there any direct evidence that Kramer was the threatening caller. The threatening calls, in conjunction with all the other circumstances, did not establish a substantial likelihood of immediate danger of an attack. I am unable to conclude that learning of the anonymous calls under these circumstances was sufficient to inform the police that there was a substantial likelihood that the plaintiffs were in immediate danger of being subjected to an unreasonable risk of serious harm at the hands of Kramer. To conclude that a special relationship giving rise to a duty to protect exists in this case would be tantamount to subjecting police to potential liability for the failure to provide personal 24-hour protection to citizens under these or like circumstances. The trial court correctly held, as a matter of law, that the defendants had no specific legal duty to protect Mrs. Feise from the attack, and properly granted summary judgment in favor of the defendants.

DECIDED DECEMBER 4, 1992 —
RECONSIDERATION DENIED DECEMBER 18, 1992 —

*Gerard J. Lupa*, for appellants.
*Drew, Eckl & Farnham, William T. Mitchell, Theodore Free-*

---

[2] The lack of probable cause in this case illustrates the type of dilemma in which police officers may be placed when a duty creating potential tort liability is imposed for failure to protect a citizen from a criminal act. The imposition of such a duty under these circumstances "puts police officers in the precarious position of choosing between potential claims for false arrest, or potential tort liability to injured third parties for failure to arrest . . . [and may have the added effect of] discourag[ing] the reasonable exercise of discretion by police officers, and encourag[ing] arrests in marginal cases supported by only slight evidence of criminal conduct." *Landis v. Rockdale County*, 206 Ga. App. 876 (427 SE2d 286) (1992) (Andrews, J., dissenting).