S92G0907. CITY OF ROME et al. v. JORDAN et al.
(426 SE2d 861)

SEARS-COLLINS, Justice.

Patricia Jordan and her husband, Cary Jordan, the appellees, brought a negligence action against the City of Rome, its chief of police, and a police department radio dispatch officer (the appellants) (collectively "the City"). The Jordans allege that the City negligently failed to properly train radio dispatch personnel, and that the City negligently failed to dispatch a police vehicle to the Jordan home in response to several telephone calls for assistance, causing Patricia Jordan to suffer serious injury and trauma.

The trial court granted the City's motion for summary judgment. Acknowledging that there are no Georgia cases on point, the trial court held that because no "special relationship" existed between the City and the Jordans, the City owed no duty to the Jordans upon which liability could be based. The Court of Appeals affirmed summary judgment as to the allegation of negligent training, finding that the Jordans had offered no evidence to rebut affidavits presented by the City to show the extent of training given dispatch officers. On the question of whether a duty exists upon which liability for failure to provide police protection can be based, the Court of Appeals reversed the trial court, holding that no "special relationship" is required for

liability of municipalities with regard to the provision of police protection in Georgia. *Jordan v. City of Rome*, 203 Ga. App. 662 (417 SE2d 730) (1992). We granted certiorari to determine "[t]he duty of police officers of a city to respond to emergency requests for help." We reverse the Court of Appeals.

First we will consider what rule should be applied in negligence cases such as this, and then we will examine the facts of this case in relation to that rule.

1. The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care.[1] *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). Whether a duty exists upon which liability can be based is a question of law. *First Federal v. Fretthold*, 195 Ga. App. 482, 485-486 (394 SE2d 128) (1990).

When considering whether there is a duty upon which a municipality may be held liable for the failure to provide police protection to individual citizens,[2] courts have taken two fundamental approaches. The majority rule is that

> liability does not attach where the duty owed by the governmental unit runs to the public in general and not to any particular member of the public[,] [except where there is] a special relationship between the governmental unit and the individual giving rise to a particular duty owed to that individual.

38 ALR4th 1194, § 1[a] (1985). We will refer to this as the "public duty" doctrine. Other courts have held that the public duty doctrine creates a virtual immunity for government entities, which is in conflict with any judicial or legislative enactment abrogating or waiving sovereign immunity. Courts taking this minority approach have found the duty element of negligence satisfied by the general duty to protect the public, and have then determined liability based on traditional tort principles of breach, foreseeability and causation. See generally 38 ALR4th 1194 (1985 and Supp. 1992); see, e.g., *Leake v. Cain*, 720 P2d 152, 160 (Colo. 1986).

The Court of Appeals favored the minority view, in light of Georgia's statutory waiver of governmental immunity to the extent of liability insurance, stating that

---

[1] The initial question of duty precedes any discussion of sovereign immunity, which "is a defense rather than an inroad on one of the elements of a tort." *Jordan v. City of Rome*, 203 Ga. App. at 669 (Beasley, J., concurring specially).

[2] We wish to point out that this case involves the municipality's *failure* to act, as opposed to any affirmative act of negligence.

> where sovereign immunity does not apply, use of the [public duty doctrine] creates a shield behind which governmental entities can avoid liability for negligent acts, thereby imposing a type of immunity unique to governmental defendants.

*Jordan*, 203 Ga. App. at 665.

We disagree. Rather, we find that the abrogation or waiver of sovereign immunity in Georgia did not create a duty on the part of a municipality where none existed before. To impose liability on the City based on a general duty to protect all citizens from the actions of third parties would "expand[] the [City's] duty and potential liability beyond that imposed [on private parties] under traditional tort analysis." *Jordan*, 203 Ga. App. at 672 (Andrews, J., dissenting). On the other hand, far from creating a general immunity from liability, adoption of the public duty doctrine requiring a special relationship between the injured party and the alleged governmental tortfeasor restricts the liability of the governmental entity for the actions of a third party similarly to the manner in which the liability of a private party is restricted.[3] Further,

> "a municipality's provision of police protection to its citizenry [is] a resource-allocating function that is better left to the discretion of the policy makers" . . . , "[t]he amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed."

(Citations and punctuation omitted.) *Kircher v. City of Jamestown*, 74 NY2d 251, 256 (543 NE2d 443, 445, 544 NYS2d 995) (1989). Therefore, where failure to provide police protection is alleged, there can be no liability based on a municipality's duty to protect the general public. However, in order to ensure responsibility and the utmost protection possible within limited means, it is important that a municipality be accountable for its negligence to some degree. Hence, where there is a *special relationship* between the individual and the municipality which sets the individual apart from the general public and engenders a *special duty* owed to that individual, the municipal-

---

[3] When considering whether a person has a duty to protect a potential victim from the acts of a potential tortfeasor, Georgia courts have adhered to the *general tort principle that a person does not have a duty to control the conduct of . . . a potential tortfeasor, so as to prevent that person from harming a third person, unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the [tortfeasor's] conduct, or (b) a special relation exists between the actor and the [tortfeasor] which gives to the [third person] a right to protection.* (Citations and punctuation omitted.) *Associated Health Systems v. Jones*, 185 Ga. App. 798, 801 (366 SE2d 147) (1988).

ity may be subject to liability for the nonfeasance of its police department.[4]

2. In order to determine whether such a special relationship exists, we adopt the following requirements:

> (1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party;
> (2) knowledge on the part of the municipality that inaction could lead to harm; and,
> (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.

This test is adapted from the test set forth in *Cuffy v. City of New York*, 69 NY2d 255 (505 NE2d 937, 513 NYS2d 372) (1987). In addition to the above elements, the test set forth in *Cuffy* requires that there be "direct contact" between the injured party and the municipality. We have deleted that requirement for two reasons. First, we can conceive of numerous instances in which the injured party is unable to directly contact the municipality, due to physical limitations or other restraints, yet meets the other requirements of a special relationship. To find the municipality free from duty solely because of the limitations and restraints on the injured party would be unfair. Second, the reason for requiring direct contact in those states which do so appears to be that if there is no direct contact then there can be no reliance on the promise of the municipality. See, e.g., *Bogart v. New Paltz*, 145 AD2d 110 (537 NYS2d 678) (1989); *Klahr v. District of Columbia*, 576 A2d 718 (D.C. App. 1990). We find that this concern is met by specifically requiring that the injured party rely on the promise of the municipality to her detriment.[5]

---

[4] Since the situation is not presented by the facts of this case, we do not determine whether a special duty may exist even in the absence of a special relationship where a police officer is present at the scene of a crime, has the knowledge and the resources to act to the benefit of the injured party, yet does not act.

[5] Other states which have adopted the public duty doctrine and do not require direct contact include Washington, where "an actionable duty to provide police services will arise if, (1) there is some form of privity between the police department and the victim that sets the victim apart from the general public, and (2) there are explicit assurances of protection that give rise to reliance on the part of the victim," (citations omitted), *Chambers-Castanes v. King County*, 100 Wash.2d 275 (669 P2d 451, 458) (1983), and California, where the state has a duty when it "voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, . . ." *Williams v. State*, 34 Cal.3d 18 (664 P2d 137, 140, 192 Cal. Rptr. 233) (1983).

Even in New York where direct contact is specifically required, the requirement has been relaxed. See, e.g., *Sorichetti v. City of New York*, 65 NY2d 461 (482 NE2d 70, 492 NYS2d 591) (1985) (requirement satisfied when mother contacted police department on behalf of child because of "close relationship of interests").

3. When construed in favor of the Jordans, *Gaylor v. Jay & Gene's Chrysler*, 183 Ga. App. 255, 256 (358 SE2d 655) (1987), the evidence in this case shows that Hoyt Marks appeared at Patricia and Cary Jordan's home early one morning while Cary Jordan was away, and asked to speak with his estranged wife, Dana Jordan Marks, who is Cary Jordan's sister. Before letting Marks into her house, Patricia called Dana, who was at her mother's house nearby, and told Dana that Marks was there. Dana told Patricia to let Marks in, call her back, and she would call the police. Patricia did as Dana instructed. When Dana called the police, she informed the police that Marks had "escaped" from an alcohol rehabilitation center, that there was a warrant out for his arrest for probation violation, and that he was at Patricia Jordan's house harassing her. The police radio dispatch officer told Dana that a police car was on its way to Patricia Jordan's home.

After Marks had talked with Dana, he turned on Patricia and sexually assaulted her at knifepoint. After Marks had assaulted Patricia once, Dana called Patricia's house. Marks held a knife on Patricia and allowed her to answer the telephone. Dana asked Patricia if the police had arrived yet. When Patricia said no, Dana said she would call them again. Then, holding a knife to her throat, Marks assaulted Patricia again.

Applying the test for a special relationship to these facts, we find there was no genuine issue of fact with regard to the requirement of detrimental reliance. Patricia Jordan argues that she did not try to fight Marks because she thought the police were coming. The evidence shows that Patricia was not aware that the police had made any promise of assistance, if in fact they did. Any reliance on her part on the police arriving was based solely on a belief that the police would come if called, not on any promise made by the police. To allow such an expression of reliance to satisfy the reliance requirement in the special relationship test would render the requirement virtually meaningless. Therefore, we find that the trial court was correct in granting summary judgment based on a finding that there was no special relationship between Patricia Jordan and the municipality.

4. As it does not relate to the question which we granted certiorari to consider, we do not address Division 3 of the Court of Appeals opinion, affirming the grant of summary judgment to the defendants on the ground that Jordan's injuries were the result of the police department's negligent and improper training of its radio dispatch officers. Accordingly, that division stands affirmed.

*Judgment affirmed in part and reversed in part. Clarke, C. J., Hunt, P. J., Benham, Fletcher, JJ., and Judge Jere F. White concur; Hunstein, J., concurs specially.*

FLETCHER, Justice, concurring.

I agree with the majority opinion that the City of Rome is entitled to summary judgment because there is no genuine issue of material fact concerning Patricia Jordan's reliance on the police. I would go further than the majority, however, and adopt the direct contact requirement as a necessary element in determining whether a special relationship exists between a municipality and an injured party. This additional element requires, with limited exceptions, "some form of direct contact between the municipality's agents and the injured party." *Cuffy v. City of New York*, 69 NY2d 255 (505 NE2d 937, 940, 513 NYS2d 372) (1987). Although it is closely related to the reliance element, the two requirements are not synonymous. Imposing the additional requirement of direct contact would rationally limit the class of citizens to whom the municipality's special duty extends. See id.

HUNSTEIN, Justice, concurring specially.

I cannot agree with the majority's adoption of the general duty/special duty analysis from *Cuffy v. City of New York*, 505 NE2d 937 (N.Y. 1987), albeit modified and retitled, which foreign jurisdictions have employed as a means of piercing a governmental defendant's defense of sovereign immunity. As reflected by the foreign authorities cited approvingly by the majority, the rationale for the analysis adopted by the majority is to establish a duty that exists notwithstanding the existence of governmental immunity. Thus, quite aside from the fact that application of the majority's analysis is inappropriate where governmental immunity has been waived, as in the case at bar,[6] I object to the adoption of the majority's "public duty doctrine" because that doctrine creates an across-the-board exception to governmental immunity that is applicable where such immunity would otherwise be a complete defense to the negligent performance of discretionary acts. Compare *Logue v. Wright*, 260 Ga. 206, 207-208 (1) (392 SE2d 235) (1990).

Under the doctrine adopted by the majority, government has a duty to all, but is responsible to none. Given that "[p]rotection to person and property is the *paramount* duty of government and shall be impartial and complete," (emphasis supplied), Const. of Ga., Art. I, Sec. I, Par. II (1983), I agree with the Court of Appeals that "the City of Rome exists in part to protect its citizens from the criminal acts of third parties," *Jordan v. City of Rome*, 203 Ga. App. 662, 666

---

[6] As the Court of Appeals correctly notes, the general duty/special duty analysis was developed to expand governmental liability in days when sovereign immunity was the general rule, see *Cuffy*, supra at 939-940, and has been rejected in jurisdictions where sovereign immunity is no longer the rule because it improperly reinstates a type of immunity unique to governmental defendants. *Jordan v. City of Rome*, 203 Ga. App. 662, 665 (417 SE2d 730) (1992).

32

(417 SE2d 730) (1992), and that no "special relationship" should be required before a duty exists requiring a governmental entity like the City to exercise ordinary care to protect persons within its boundaries from the intentional and often unpredictable criminal acts of third parties when the governmental entity knew or should have known that its acts or omissions exposed those persons to a foreseeable risk of harm. Id. at 666-667 (2). See also *Feise v. Cherokee County*, 207 Ga. App. 17 (427 SE2d 294) (1992), applying that analysis to counties.

The analysis set forth in *Jordan*, supra, is consistent with the established law of this State, in that *Jordan* applies traditional tort principles, does not negatively affect our rulings on governmental immunity, and reflects that questions of fact regarding issues such as foreseeability and detrimental reliance are best resolved by a jury as the trier of fact rather than as artificial questions of "duty" to be resolved as a matter of law by the trial court. Most importantly, the *Jordan* analysis also recognizes that it is a question of fact for resolution by the jury whether the actions taken by the governmental defendant in response to its knowledge that a person within its boundaries has been exposed to a foreseeable risk of harm were "within the capabilities of the [governmental defendant's] resources." Id. at 668.

In a suit against a governmental defendant for failure to provide police protection, the pivotal issue involves the fact question whether the governmental defendant has a complete defense to the negligence suit because it did not possess the resources to respond to an emergency situation in the manner plaintiffs contend would have prevented the alleged harm. This defense is critically important to avoid the danger of subjecting governmental entities to " 'wholesale liability in negligence to all crime victims on generalized charges of insufficiency of care in law enforcement.' [Cit.]" *Jordan*, supra at 667. Because this pivotal defense will so often be the determinative factor in the resolution of a suit alleging negligent failure to provide police protection, I would modify the analysis in *Jordan* to direct trial courts to examine the evidence adduced by the parties regarding this issue at the earliest possible moment in order to determine whether genuine issues of fact remain for the jury.

The case at bar illustrates the importance of this issue. It appears uncontroverted in the record that appellants did not respond to the calls placed by Dana Jordan Marks and her mother by sending a police car to the Jordan residence because the police were otherwise occupied handling a shooting in another part of town, calls regarding which were just coming in at the time of Dana Marks' first call alerting police that her husband, an "escapee" from a local hospital, was harassing her sister-in-law. Assuming, arguendo, that Dana Marks' call was sufficient to place the City on notice that a criminal act of some nature was in progress, the record is devoid of any evidence that

the City had any police units available to respond to Dana Marks' call at that time. Hence, the record establishes that no questions of fact remain regarding appellants' complete defense to appellees' suit alleging negligent failure to provide police protection.[7]

Based on this review, I would find that appellants have a complete defense to appellees' suit given the uncontroverted evidence that the resources were not available at the time of the attack to respond, even assuming appellants possessed the knowledge that Ms. Jordan had been exposed to a foreseeable risk of harm. Accordingly, because I would find the trial court's holding right for the reason set forth above, I would affirm the trial court's judgment and reverse the Court of Appeals. Therefore, I can concur only in the judgment of the majority's opinion.

DECIDED MARCH 15, 1993 —
RECONSIDERATION DENIED MARCH 30, 1993.

*Brinson, Askew & Berry, Robert M. Brinson, J. Anderson Davis,* for appellants.

*Robins, Kaplin, Miller & Ciresi, Daniel A. Ragland,* for appellees.

---

[7] Although the record reflects that appellants failed to respond at all to the emergency call by sending a police car *after* the attack, at whatever point the shooting crisis was resolved and police cars became available to respond, the record establishes uncontrovertedly that appellees were not harmed thereby because it is uncontroverted Jordan was not rendered unable by the attack to obtain medical attention and that although she did not personally report the attack until several days later, this delay did not prevent the capture, prosecution, and conviction of her attacker. "In order for a tort action in negligence to lie, there must be injury to the plaintiff resulting from the defendant's negligence. [Cits.]" *Church v. SMS Enterprises,* 186 Ga. App. 791, 793 (368 SE2d 554) (1988). Appellants were entitled to summary judgment on this issue.