Steve HENSHILWOOD and Kelly Henshilwood, individually and for and on behalf of their minor daughter, Laura Henshilwood, Appellants–Plaintiffs,

v.

HENDRICKS COUNTY, Board of Commissioners of Hendricks County, Hendricks County Highway Department, Hendricks County Department of Health, Appellees–Defendants.

No. 54A01–9502–CV–38.

Court of Appeals of Indiana.

July 31, 1995.

Transfer Denied Jan. 11, 1996.

Andrew C. Charnstrom, E. Joseph Kremp, III, Wooden McLaughlin & Sterner, Indianapolis, for appellants.

Kenneth Collier–Magar, Collier–Magar & Kirages, Indianapolis, for appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Steve and Kelly Henshilwood, individually and on behalf of their minor daughter, Laura Henshilwood (hereinafter "the Henshilwoods") appeal from the trial court's grant of a motion for summary judgment in favor of Hendricks County, Board of Commissioners of Hendricks County, Hendricks County Highway Department and Hendricks County Department of Health (collectively "the County"). The Henshilwoods brought a negligence action against the County for injuries Laura sustained when she came into contact with contaminated water which had overflowed onto their property. The County denied liability on the basis of governmental immunity and the absence of a duty owed to the Henshilwoods. The trial court found that although the County was not immune from suit, the County owed no duty to the Henshilwoods and entered summary judgment on that ground. The County brings a cross-appeal from the trial court's determination that the County was not entitled to immunity under the Indiana Tort Claims Act.[1]

We affirm in part, reverse in part, and remand.

### ISSUES

The parties present two issues for our review which we restate as follows:

1. Whether the trial court erred when it determined the County was not immune from liability under the Tort Claims Act.

2. Whether the trial court erred when it found, as a matter of law, that the County owed no duty to the Henshilwoods.

### FACTS

The facts relevant to this appeal show that the Henshilwoods' home is located on the west side of County Road 0 in southern Hendricks County. On the east side of County Road 0 is a ditch which flows south through a culvert, crosses underneath County Road 0 and ends at the Henshilwoods' property. Sometime during late 1988 or early 1989, water from the ditch began to overflow onto the Henshilwoods' land. Ordinarily, a cement box with a grate over the top collected the water from the culvert and emptied it into an underground pipe which ran from the southeastern to the southwestern corner of the Henshilwoods' property. However, during heavy rains and on other occasions, water from the ditch would overflow onto the southeastern portion of the Henshilwoods' property where it would pool until it would eventually drain into the underground pipe.

Steve Henshilwood spoke with the County Engineer, Walter Reeder, regarding the flooding on his land. The County proposed running an open trench across the Henshilwoods' property to extend the flow of the ditch from the front to the back of their property. The Henshilwoods rejected the proposal as being too expensive and aesthetically objectionable. Thereafter, a neighbor of the Henshilwoods contacted the County regarding pooling that was also occurring in his yard. The County again suggested that the Henshilwoods run an open trench through their yard in order to alleviate the pooling in both yards, and the Henshilwoods again rejected the proposal.

David and Jo Williams (the "Williams") live north of the Henshilwoods on the east side of County Road 0. In 1987, prior to the Henshilwoods' flooding, the Williams experienced the backup of raw sewage in their yard and house due to problems with their septic system. The County directed the Williams to perform correctional work on their existing system and also instructed them to install

---

1. We heard oral argument on July 13, 1995.

a subsurface drain pipe across their yard to help move surface water away from the septic field and to the ditch.

In June of 1990, the County Engineer filed a complaint with the Health Department regarding suspected sewage contamination of the water in the ditch along County Road 0. Various tests of the water revealed unsatisfactory levels of E–Coli bacteria. Another complaint was later filed by a nearby property owner regarding contamination, and further tests of the water showed the continued presence of E–Coli bacteria in the ditch water. The Henshilwoods were not aware that the ditch water was contaminated. In October of 1990, Laura Henshilwood became ill after playing in leaves in the area of her yard where water from the ditch had pooled. Laura was subsequently diagnosed with Typhoid.

## DISCUSSION AND DECISION

### Standard of Review

In reviewing the trial court's ruling on a motion for summary judgment, this court applies the same standard applied by the trial court. *Walling v. Appel Service Co.* (1994), Ind.App., 641 N.E.2d 647, 648–49; *Miller v. Monsanto* (1993), Ind.App., 626 N.E.2d 538, 541. Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). We resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Terre Haute First Nat. Bank v. Pacific Employers Ins. Co.* (1994), Ind.App., 634 N.E.2d 1336, 1337. Even if the trial court does not believe that the non-moving party will be successful at trial, summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *State Street Duffy's Inc. v. Loyd* (1993), Ind.App., 623 N.E.2d 1099, 1101, *trans. denied.*

### Issue One: Immunity

On cross-appeal, the County contends that the immunity provisions of the Indiana Tort Claims Act, Indiana Code § 34–4–16.5–3,

preclude liability in this case. The absence of governmental immunity would require further inquiry into the duty element of negligence; however, because a finding of immunity would render moot the issue of duty, we begin our analysis with that threshold determination. *See Peavler v. Monroe County Bd. of Comm'rs* (1988), Ind., 528 N.E.2d 40, 47.

A governmental entity is subject to liability for torts committed by its agencies and its employees unless one of the immunity provisions of the Tort Claims Act applies. *Id.* at 42. The party seeking immunity bears the burden of proving that its conduct falls within one of the exceptions set out in the Act. *Mullin v. Municipal City of South Bend* (1994), Ind., 639 N.E.2d 278, 281.

The County first contends it was immune from liability pursuant to Indiana Code § 34–4–16.5–3(2). That subsection of the statute provides that a governmental entity or employee acting within the scope of his employment is not liable if a loss results from:

the condition of a reservoir, dam, canal, conduit, drain or similar structure when used by a person for a purpose which is not foreseeable.

We agree with the Henshilwoods that the ditch was not used for an unforeseeable purpose. Use of the ditch to collect water was its intended use, and clearly foreseeable and known to the County. The County cannot claim immunity under this clause.

Second, the County claims immunity under I.C. § 34–4–16.5–3(7), which provides immunity for a loss that results from:

the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

The County is not entitled to immunity under this provision because contrary to its assertion, the Henshilwoods do not allege in their complaint that the County failed to adopt or enforce any law within the meaning of this provision.

■ Next, the County asserts it is immune from suit pursuant to I.C. § 34–4–16.5–3(9) which states that a governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

the act or omission of someone other than the governmental entity or the governmental entity's employee.

The County argues that because the Henshilwoods claim is premised upon the fact that sewage was released from the Williams' property into the culvert and then into the ditch, the County cannot be liable.

While the County correctly asserts that it cannot be liable for an act or omission of a third party, the Henshilwoods' claim against the County is a separate and distinct claim not necessarily arising from any negligence by the Williams. In their complaint, the Henshilwoods allege several separate acts of negligence by the County, including that it was negligent in constructing the ditch, failing to maintain the ditch, instructing the Williams' to direct further water into the ditch, failing to warn of known contamination of the ditch, and failing to prevent the spread of communicable diseases. Thus, the County's liability, if any, is not derived solely from the acts or omissions of a third party. The County has not shown it is immune from liability under this theory.

■ The County maintains it is also entitled to immunity under I.C. § 34–4–16.5–3(10) which states that a governmental entity is not liable if the loss results from:

the issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law.

The County asserts that it originally issued permits with regard to septic system installations and, thus, any subsequent failure to revoke these permits cannot be the basis for liability. Again, the County's argument misses the mark. The Henshilwoods do not allege that the County negligently issued or failed to revoke any permit; rather, they contend it failed to adequately construct and maintain the ditch.

■ Finally, the County asserts that it is entitled to immunity pursuant to I.C. § 34–4–16.5–3(11) because the Henshilwoods' loss resulted from:

failure to make an inspection, or making an inadequate or negligent inspection, of any property, other than the property of the governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety.

Contrary to the County's contention, the Henshilwoods do not claim that it made a negligent or inadequate inspection of any nongovernmental property. Indeed, the Henshilwoods' concede that the County made seemingly adequate inspections of the Williams' property which revealed breaches in the septic system. Reply Brief of Appellant at 13. The Henshilwoods claim that the County failed to exercise ordinary care with respect to the ditch, property under the County's control. We conclude this exception does not shield the County from liability.

In sum, we agree with the trial court that the County is not entitled to immunity pursuant to any of the above-mentioned exceptions to the Tort Claims Act. Thus, the trial court properly denied the County's motion for summary judgment on its claim of statutory immunity.

### Issue Two: Duty

■ Because we have found no immunity, we must consider the Henshilwoods' claim against the County for negligence. To recover under a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure by the defendant to conform its conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the failure. *Smith v. Beaty* (1994), Ind.App., 639 N.E.2d 1029, 1032.

■ In the instant case, the issue of duty is dispositive. The existence of a duty, that is, whether the law recognizes any obligation on the part of a particular defendant to conform its conduct to a certain standard for the benefit of the plaintiff, is a question of law for the court. *Webb v. Jarvis* (1991),

Ind., 575 N.E.2d 992, 995. The duty of ordinary care owed to another arises as a matter of law out of some relationship existing between the parties, and it is for the court to determine whether such relations give rise to a duty. *Id.*

■ In order to recover against a governmental entity for negligence, the plaintiff must show more than a duty owed to the public as a whole. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 368. Liability of a governmental entity will not be found unless the relationship between the parties is one that gives rise to a special or private duty owed to a particular individual. *Id.*

■ The Henshilwoods contend the trial court erred when it granted summary judgment to the County and found, as a matter of law, that the County did not owe the Henshilwoods a private duty. Specifically, the Henshilwoods contend the trial court erroneously relied on our supreme court's decision in *Mullin v. Municipal City of South Bend* (1994), Ind., 639 N.E.2d 278.

In *Mullin,* a neighbor called 911 to report a fire at the plaintiff's home. The dispatcher asked if anyone was inside the house, and the neighbor responded "I think so." *Id.* at 280. Fire trucks, but no ambulances were dispatched to the scene. It was not until the fire trucks arrived that an ambulance was requested, and one of the plaintiff's children died before an ambulance finally arrived. The plaintiff filed suit against the City and alleged negligence due to the dispatcher's failure to send an ambulance to the scene immediately. *Id.*

The *Mullin* court followed the decision of the Georgia Supreme Court in *City of Rome v. Jordan* (1993), 263 Ga. 26, 426 S.E.2d 861, 863, and adopted the following three part test for determining the circumstances under which a private duty is imposed on a governmental entity: (1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party; (2) knowledge on the part of the municipality that inaction could lead to harm; and (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking. *Id.* at 284.

The *Mullin* court applied this three-part test and determined that the evidence did not establish a private duty on the part of the City in connection with its decision not to dispatch an ambulance to the scene of the fire. *Id.* at 285.

In the present case, the trial court applied the *Mullin* public/private duty test and determined that the designated evidence did not show that the County made any explicit promise to the Henshilwoods with regard to the contents of the ditch water. The court further found that any duty to warn of or eliminate the contamination was owed to the general public and that the Henshilwoods had not established they relied on the County to act as they were unaware that the ditch water was contaminated. Therefore, the trial court concluded that the County owed no private duty to the Henshilwoods.

The test adopted in *Mullin* does not apply to the circumstances of this case. The language used in the public/private duty analysis established in *City of Rome,* and adopted in *Mullin,* makes it clear that the test applies only in determining whether a duty is owed based on a governmental entity's alleged failure to act. The test does not apply to an alleged affirmative act of negligence where the entity itself has created the plaintiff's perilous situation. The court in *City of Rome* expressly limited its analysis to cases involving a municipality's failure to act, rather than its affirmative acts of negligence. *City of Rome,* 426 S.E.2d at 862 n. 2.

Indeed, the public policy reasons underlying the *Mullin* decision do not apply to a governmental entity's affirmative negligence. In accordance with existing Indiana law regarding government provided protection and rescue services, the court in *Mullin* reasoned that it was poor public policy to impose upon the government the obligation to guarantee and assure the welfare of every member of the public. *Mullin,* 639 N.E.2d at 284. The supreme court stated that the "mere existence of rescue services does not, standing alone, impose upon the governmental entity a duty to use them for the benefit of a particular individual." *Id.* The court concluded that a private duty may attach once the entity has been made aware of the plight of

an individual, leads that person to believe that governmental rescue services will be used, and that individual detrimentally relies on that promise. *Id.* at 285. Only in such a case would it be "unfair to leave that individual worse off than if the individual had not sought assistance from the government at all." *Id; see Koher v. Gary Dial, et. al,* (filed July 26, 1994), Ind.App. No. 17A03–9412–CR–443 (application of *Mullin* test established private duty owed by County as facts showed injured party relied on County's promise to dispatch ambulance).

■ The traditional rule which bars liability for mere nonfeasance, or the defendant's failure to act, has its origins in the reluctance of courts to impose a duty of care absent a special relationship between the parties. *Ember v. B.F.D., Inc.* (1986), Ind. App., 490 N.E.2d 764, 770. However, the law recognizes a critical distinction between the failure to act, as in the failure to protect the welfare of citizens or to provide rescue services, and an affirmative act of negligence which in itself causes the plaintiff's harm. *See City of Rome,* 426 S.E.2d at 862 n. 2. In the latter case, rather than a gratuitous undertaking to aid or alleviate the plaintiff's peril, the governmental entity has created the plaintiff's peril by some affirmative act. Put another way, while an entity is generally shielded from liability on the ground that the decision not to act is a policy decision, or that the duty to act is owed to the public at large and not to any particular person, a public entity may nevertheless be liable for its affirmative acts of negligence. *Prosser & Keeton*

*on Torts* § 131, at 1049 (5th ed. 1984), (1988 Supp. at 149); *see Hansen v. Audubon* (1985), Iowa, 378 N.W.2d 903, 907 (City's failure to repair or maintain existing sewer system was not discretionary function but affirmative negligence; City liable for sewage backup in plaintiff's house).

■ We hold that the three-part public/private duty analysis adopted in *Mullin* does not apply to cases in which the plaintiff alleges that the government's affirmative act of negligence has created the situation in which the plaintiff suffered harm. The governmental entity's affirmative act in relation to a particular individual gives rise to a private duty to that plaintiff. Under the facts of this case, the Henshilwoods have demonstrated the County owed them a duty to maintain the ditch so as not to allow the continued overflow of water onto their land or a duty to warn affected property owners of the contamination discovered by the County.[2] The trial court's grant of summary judgment to the County on the issue of duty is reversed.[3]

Affirmed in part, reversed in part, and remanded.

BAKER and BARTEAU, JJ., concur.

2. In *Rodman v. City of Wabash* (1986), Ind.App., 497 N.E.2d 234, this court found that the City owed a duty of reasonable care in maintaining the sewage system to all sewage drain users as a class and no special or private duty to the plaintiffs as individuals. *Id.* at 240. We determined on the facts of that case that the plaintiffs had failed to show they suffered a particularized injury different in kind than suffered by the general public. *Id.* The facts of the instant case are distinguishable, in that only the Henshilwoods and another neighbor experienced the flooding of contaminated water from the ditch on their land. The Henshilwoods have sufficiently alleged they suffered a particularized injury.

3. The County contends that E–Coli bacteria, as was detected in the ditch water, does not cause Typhoid. We note that genuine issues of material fact remain regarding whether the County's actions were the proximate cause of Laura's injuries.