**Cheryl A. Thornton BENTHALL, as Personal Representative of the Estate of Gary L. Thornton, Jr., Deceased, Cheryl A. Thornton Benthall, Martha G. Thornton, and Gary L. Thornton, Sr., Appellants-Plaintiffs,**

v.

**CITY OF EVANSVILLE, City of Evansville Police Department, County of Vanderburgh, and Vanderburgh County Sheriff's Department, Appellees-Defendants.**

No. 26A01–9510–CV–322.

Court of Appeals of Indiana.

Dec. 16, 1996.

Transfer Denied May 16, 1997.

Nancy G. Endsley, Indianapolis, Michael J. Hayden, Evansville, for Appellants–Plaintiffs.

Carl A. Heldt, Shawn M. Sullivan, Lacey, Terrell, Annakin, Heldt & Baugh, Evansville, for Appellees–Defendants.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Cheryl A. Thornton Benthall, individually and as the personal representative of the Estate of Gary L. Thornton, Jr., Martha G. Thornton, and Gary L. Thornton, Sr., (collectively, the "Estate") brought a wrongful death action against the City and Police Department of Evansville (collectively, the "City") and the County and Sheriff's Department of Vanderburgh County (collectively, the "County"). The Estate claimed that both the City and the County were negligent in responding to an automobile accident involving the decedent, Gary L. Thornton, Jr. The trial court granted summary judgment in favor of the City and the County, and the Estate now appeals from the judgment entered in favor of the County.

We affirm.[1]

### ISSUES

The Estate presents two issues for our review which we restate as:

1. Whether the County properly designated supporting materials to the trial court pursuant to Indiana Trial Rule 56(C).

1. We heard oral argument on November 13, 1996.

2. Whether the County owed a duty of care to Thornton.

## FACTS

On the evening of October 26, 1992, Gary Thornton left his residence to visit his parents at their home in Vanderburgh County. At that time, Thornton was driving a Chrysler Cordoba with a temporary dealer license tag. Early the next morning, officers of the Vanderburgh County Sheriff's Department arrived at the scene of an accident on Hillsdale Road, near the home of Thornton's parents. The Cordoba was found overturned in a field approximately 17 feet east of Old State Road, near the intersection of Hillsdale Road and Old State Road. Between 2:30 a.m and 3:30 a.m., sheriff's deputies conducted a search of the accident scene and then had the car towed away. The sheriff did not locate Thornton or any other person at the scene, nor did the sheriff resume the search the following day.

On October 28, 1992, Thornton's wife, Cheryl, reported to the Evansville City Police Department that Thornton and the Cordoba were missing. She provided the police with a description of Thornton and the car and with information that his last known whereabouts was at or near his parents' residence. Neither the police nor the sheriff's department informed Cheryl of the accident on Hillsdale Road.

Almost one month after the accident, two girls discovered Thornton's body, which was located 17 feet east of Old State Road and approximately 100 feet from the accident scene. A photograph of Thornton's wife and her birth certificate were also located near Thornton's body. Upon learning that her husband had been found, Cheryl searched the Cordoba, which was being stored at a towing company. Inside the car, she found a "dog tag" key chain still in the ignition which provided Thornton's name and address. Cheryl also found a lease which she and Thornton had signed and which indicated their names and address.

On October 26, 1994, the Estate filed a wrongful death claim against the City and the County. Venue was changed from Vanderburgh County to Gibson County. The County filed a motion to dismiss, which was followed by the City's motion for summary judgment, and a hearing was held on both motions. The Estate's response contained material outside the pleadings, and the County's motion to dismiss was accordingly converted to a motion for summary judgment. During the hearing, the County stated that it would accept all facts in the Estate's complaint and supporting affidavit as true. On June 22, 1995, the trial court entered summary judgment in favor of both the City and the County.

The Estate now appeals the judgment in favor of the County.

## DISCUSSION AND DECISION

### Standard of Review

■ Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). At the time of filing a summary judgment motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice and any other matters upon which the party relies for purposes of the motion. T.R. 56(C). Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). In ruling on a summary judgment motion, all evidence must be construed in favor of the nonmoving party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Bailey v. Manors Group*, 642 N.E.2d 249, 252 (Ind.Ct.App.1994), *trans. denied.* When reviewing the grant or denial of summary judgment, we apply the same standard as that used by the trial court. *Ramon v. Glenroy Const. Co.*, 609 N.E.2d 1123, 1127 (Ind.Ct.App.1993), *trans. denied.*

### Issue One: Designation of Evidence

■ The Estate contends that summary judgment was inappropriate because the County failed to satisfy the requirements of

Indiana Trial Rule 56(C). Specifically, the Estate argues that the County failed to designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relied for purposes of the motion. T.R. 56(C). We do not agree.

The Estate correctly asserts that a party must specifically designate to the trial court all materials relied upon in the motion for summary judgment. *Leons v. Bloemker,* 649 N.E.2d 1041, 1044 (Ind.Ct.App.1995). The 1991 amendments to Trial Rule 56 have substantially limited the scope of materials in the record that the trial court may examine when determining the propriety of summary judgment and, correspondingly, what parts of the record we may properly consider on review. *Graham v. Vasil Management Co.,* 618 N.E.2d 1349, 1350 (Ind.Ct.App.1993). However, Trial Rule 56 does not specify the manner in which designation must be accomplished. *Id.* This court has stated that a party may meet the designation requirements either in a writing or in an oral presentation to the trial court if no written response is made. *Czaja v. City of Butler,* 604 N.E.2d 9, 10 (Ind.Ct.App.1992); *see also National Bd. of Exam'rs for Osteopathic Physicians and Surgeons, Inc. v. Am. Osteopathic Ass'n* 645 N.E.2d 608, 615 (Ind.Ct. App.1994) (parties may decide how to designate as long as trial court is apprised of specific material upon which parties rely in support of or in opposition to motion for summary judgment).

In this case, the County filed a motion to dismiss and a supporting brief which argued pursuant to Indiana Trial Rule 12(B)(6) that, as a matter of law, the Estate had failed to state a claim upon which relief could be granted. The Estate then filed a response which relied upon matters outside the pleadings. Accordingly, the County correctly indicated to the trial court at the hearing on the motion to dismiss that the Estate had converted the motion to dismiss into a motion for summary judgment. *See* Ind. Trial Rule 12(B)(8). The County then stated that for purposes of the motion, it would take the Estate's complaint and Cheryl Benthall's affidavit as true. Record at 202. We conclude

that on this uncomplicated record, the County's oral designation of evidence was sufficiently specific for summary judgment purposes. The Estate has not shown error on this issue.

### Issue Two: Duty

#### A. Governmental Nonfeasance

The Estate contends that the trial court erred in granting summary judgment in favor of the County. Specifically, the Estate claims that the County owed a duty to Thornton to investigate the scene of the accident in order to find any possible victims. The Estate reasons that had the sheriff's deputies thoroughly searched the accident scene, they could have located Thornton, provided medical care and possibly saved his life. Thus, the Estate argues, a genuine issue of material fact exists as to whether Thornton was alive when the sheriff's deputies searched the scene, and whether the sheriff's actions in removing the car and failing to contact either the owner of the car or Thornton's wife prevented others from coming to Thornton's aid.

 To succeed in a negligence action, the plaintiff must establish: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure of the defendant to conform his conduct to that standard; and (3) an injury proximately caused by the breach of duty. *Hook's SuperX, Inc. v. McLaughlin* 642 N.E.2d 514, 517 (Ind.1994) (citing *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991)). The existence of a duty is ordinarily a question of law which is determined by the court. *Id.* In order to recover against a governmental entity for negligence, the plaintiff must show more than a duty owed to the public as a whole. *Henshilwood v. Hendricks County,* 653 N.E.2d 1062, 1067 (Ind.Ct.App.1995), *trans. denied.* Liability of a governmental entity will not be found unless the relationship between the parties is one that gives rise to a special or private duty owed to a particular individual. *Id.*

In *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278 (Ind.1994), our supreme court articulated a three-part test for

determining whether a governmental actor owes a duty to a tort claimant in instances of governmental nonfeasance. A private duty will only be imposed if there had been:

> (1) an explicit assurance by the municipality, through promises or action, that it would act on behalf of the injured party; (2) knowledge on the part of the municipality that inaction could lead to harm and (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.

*Id.* at 284 (citing *City of Rome v. Jordan,* 263 Ga. 26, 426 S.E.2d 861 (1993)). *Mullin* clearly states that a duty will only arise in those situations where the "governmental entity is aware of the plight of a particular individual and leads that person to believe that governmental rescue services will be used, and the individual detrimentally relies on that promise." *Id.* at 284–85.

■ The Estate maintains that an application of the *Mullin* test should result in a finding that the County owed a private duty to Thornton. In its brief, the Estate argues that the sheriff's search of the accident scene "was an explicit assurance to any occupant of the badly damaged car that a law enforcement officer initiated measures to discover whether there was anyone who had been injured by the accident." Brief of Appellant at 20. The Estate further argues that the sheriff knew or should have known that whoever had been in the car prior to the accident was in need of assistance and that a failure to render assistance could lead to that person's death. Lastly, the Estate insists that Thornton justifiably and detrimentally relied on a governmental rescue service to discover the overturned car and come to his assistance. We do not agree that the requirements of the *Mullin* test have been satisfied.

■ The mere existence of rescue services does not, standing alone, impose upon the governmental entity a duty to use them for the benefit of particular individual. *Mullin,*

639 N.E.2d at 284. Before a private duty can arise, the governmental entity must know that an identified person is in need of assistance and must make an assurance, either directly or indirectly, to that identified person that a specific manner of assistance will be rendered. *See id.* at 284–85. Furthermore, the injured party must have some knowledge that the government has made an explicit assurance to render assistance. *See City of Rome,* 426 S.E.2d at 864 (victim must have either direct contact with governmental entity or knowledge that governmental entity has made explicit assurance to someone acting on victim's behalf that rescue services would be provided). Absent these conditions, the governmental entity owes a public, not a private, duty to the injured party, and liability will not attach to the government's nonfeasance.

The Estate has failed to demonstrate that the County made an explicit assurance to Thornton that assistance would be rendered. The evidence does not show that the sheriff made any representation to anyone acting on Thornton's behalf or that Thornton was aware of the sheriff's presence at the accident scene. Thornton may have assumed that upon discovering his damaged car, law enforcement officials would come to his aid, but as *Mullin* indicates, this alone is insufficient to establish a private duty. Without an explicit assurance from the County, there can be no reliance. The Estate has failed to show the existence of a private duty as required by the *Mullin* test.

### B. Governmental Misfeasance

The Estate correctly points out that the *Mullin* test does not apply in cases of governmental misfeasance.[2] *See Henshilwood,* 653 N.E.2d at 1067.

> The language used in the private/public duty analysis established in [*Mullin* ] ... makes it clear that the test applies only in determining whether a duty is owed based on a governmental entity's alleged failure

---

2. The County argues that the Estate failed to preserve this argument for appeal because it was not specifically addressed in either the complaint or at the pre-trial hearing. We disagree. Admittedly, the Estate's complaint focuses entirely on the County's failure to act. However, at the pre-

trial hearing, the Estate argued that a duty was created once the sheriff's deputies began to investigate the accident scene. Record at 234–35. We find that contention to have sufficiently preserved the Estate's misfeasance argument.

to act. The test does not apply to an alleged affirmative act of negligence *where the entity itself has created the plaintiff's perilous situation.*

*Id.* (emphasis added). Accordingly, the Estate argues that the County owed Thornton a duty of care as a result of the sheriff's negligent investigation of the accident scene and removal of the car, which prevented other parties from locating and rescuing Thornton. We cannot agree.

■ The law recognizes a critical distinction between nonfeasance and misfeasance. As our court stated in *Henshilwood,* "In the latter case, rather than a *gratuitous undertaking to aid or alleviate the plaintiff's peril,* the governmental entity has created the plaintiff's peril by some affirmative act." *Id.* at 1068 (emphasis added). However, an affirmative act by the governmental entity does not, in and of itself, establish a private duty. There must be some causal link between the affirmative act and the victim's peril. *See id.* at 1064–65, 1068 (county's affirmative negligence in designing, building and maintaining sewage ditch containing contaminated water created private duty to plaintiff who became ill upon contact with sewage water). In *Mullin,* for example, the 911 operator affirmatively responded to an emergency call by dispatching fire trucks to a house fire without also sending an ambulance. However, it was the fire, and not the emergency response, that created the victim's peril. *Mullin,* 639 N.E.2d at 280.

■ The circumstances in the present case are similar. The perilous situation in each instance was created by an independent source, and the governmental entity's failure to alleviate the peril, even when coupled with affirmative acts, does not give rise to a private duty. Here, Thornton's perilous situation resulted from his car accident. While the sheriff's department did act affirmatively in searching the accident scene and removing the car, those actions amounted to only a gratuitous undertaking to investigate. The Estate has failed to show that any affirmative act of negligence by the County created Thornton's peril. Without such evidence, the Estate has not established that the County,

due to its affirmative acts, owed Thornton a duty of care.

The Estate has not demonstrated that the County owed Thornton a duty of care under either *Mullin* or *Henshilwood.* Accordingly, the trial court's entry of summary judgment in favor of the County was appropriate.

Affirmed.

ROBERTSON and BAKER, JJ., concur.