Nicholas S. KING b/n/f Randall S. King, Randall S. King and Peggy L. King, Appellants–Plaintiffs,

v.

NORTHEAST SECURITY, INC. and Metropolitan School District of Washington Township, Appellees–Defendants.

No. 49A02–9907–CV–498.

Court of Appeals of Indiana.

July 25, 2000.

C. Dennis Wegner, Jeffrey K. Orr, C. Dennis Wegner & Assoc. P.C., Indianapolis, Indiana, Attorneys for Appellants.

Andrew P. Wirick, Hume Smith Geddes Green & Simmons, John P. Daly, Jr., Mark A. Holloway, Stephenson Daly Morow & Kurnick, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE[1]

Appellants–Plaintiffs Nicholas S. King (King) b/n/f Randall S. King (Randall), Randall S. King and Peggy L. King (Peggy), King's parents, appeal the trial court's ruling granting summary judgment in favor of Northeast Security, Inc. (Northeast) and the Metropolitan School District of Washington Township (School), on King's complaint for damages against Northeast and the School for personal injuries he sustained after being beaten by students in a parking lot at North Central High School (North Central) in Indianapolis,

---

1. We heard oral argument on June 7, 2000, in     Indianapolis, Indiana.

Indiana. In his complaint, King alleged that Northeast and the School breached a private duty of care to provide security services to protect him from acts of violence at the school. In granting summary judgment in favor of Northeast and the School, the trial court concluded that neither the School nor Northeast owed a private duty to King, as an individual student of the school.

We affirm in part, reverse in part and remand for further proceedings.

## ISSUES

On appeal, King raises four issues, which we consolidate and restate as two dispositive issues:

1. Whether the trial court erred by granting summary judgment in favor of the School on the ground that the School, as a governmental entity, did not owe King a private duty of care.

2. Whether the trial court erred by granting summary judgment in favor of Northeast on the ground that the contract between the School, a political subdivision, and Northeast, did not create a duty running from Northeast to King because the contract was for the benefit of the students of North Central as a whole, and not a particularized obligation to any single student of the school, and therefore, an individual student, such as King, was not a third party beneficiary of the contract.

## FACTS AND PROCEDURAL HISTORY

On April 18, 1996, King was a student at North Central. At approximately 3:00 p.m. on that day, King was assaulted in the west parking lot at the school, and suffered severe dental and bodily injuries.

On or about November 1, 1995, the School and Northeast entered into a contract for Northeast to provide security services for North Central, including three special deputies to patrol outside between 7:00 a.m. and 3:30 p.m. At the time King was assaulted, the security guard on duty had gone inside the school building to make a personal telephone call.

On October 31, 1996, King filed an action for damages against the School and Northeast as a result of their alleged negligence. On December 3, 1998, Northeast filed a motion for summary judgment, claiming that it did not breach any duty owed to King and that it could not have reasonably foreseen the criminal attack that occurred. A hearing was held on Northeast's motion on March 22, 1999, and on April 5, 1999, the trial court granted Northeast's motion for summary judgment, concluding that King was not a third party beneficiary to the contract between Northeast and the School, and therefore, Northeast did not owe a duty to King specifically. On March 3, 1999, the School filed a motion for summary judgment, claiming that it did not owe a private duty to King. A hearing was held on the School's motion on June 15, 1999, and on June 22, 1999, the trial court granted the School's motion for summary judgment, concluding that based upon the three-part test from *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278 (Ind.1994), the School did not owe a private duty to King. Additional facts will be supplied when necessary.

## DISCUSSION & DECISION
### Standard of Review

Summary judgment is appropriate where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C). Our standard of review is well established. Although King, the non-moving party, has the burden of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court. *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 280–81 (Ind.1994). On summary judgment, all facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Wright v. Carter*,

622 N.E.2d 170, 171 (Ind.1993). To recover under a theory of negligence, the plaintiff must establish: (1) a duty on the part of the defendant to conform its conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure on the part of the defendant to conform its conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the breach. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991). Because the trial court granted summary judgment on the first element of negligence—duty—we address only that issue. The issue of whether there is a legal duty owed by one party to another in a negligence action is a pure question of law. *Williams v. R.H. Marlin, Inc.*, 656 N.E.2d 1145, 1155 (Ind. Ct.App.1995). However, factual questions may be interwoven in this issue, thus rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder. *Jacques v. Allied Bldg. Services of Indiana, Inc.*, 717 N.E.2d 606, 608 (Ind.Ct.App.1999).

## I. *The School*

King argues that the trial court erred in granting summary judgment in favor of the School because a private duty existed between him and the School based upon the School's negligent affirmative acts. Specifically, King contends that the School, as a governmental entity, by engaging in the affirmative acts of employing security, advising King to stop riding the school bus, and its supervision of the security guards, thereby created King's perilous situation, resulting in his injuries. Thus, King alleges that the School engaged in affirmative acts of negligence that created the perilous situation, thereby dispensing with a public duty-private duty analysis under *Mullin*. Because our supreme court has modified the *Mullin* test to only apply to situations involving emergency services, *Benton v. City of Oakland City*, 721 N.E.2d 224 (Ind.1999), and the trial court's grant of summary judgment specifically relied on *Mullin* to conclude that the evidence did not satisfy the *Mullin* test in

order for the School to be held liable, we cannot affirm the trial court's grant of summary judgment in the School's favor on those grounds. Therefore, we review this case *de novo*, to determine if there is evidence independent of a *Mullin* test analysis to affirm summary judgment in the School's favor.

In addition, King argues that the School "should not be permitted to cloak its negligent acts under the cover of law enforcement immunity." (Appellant's Reply Brief p. 11). Essentially, King contends that the School's affirmative act of hiring security guards to be observant of criminal activity in the parking lots waived its law enforcement immunity. Ind.Code § 34-4-16.5-3(7), recodified as Ind.Code § 34-13-3-3(7), states that a governmental entity is not liable if a loss results from the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment. Nevertheless, the trial court found that whether or not the School is immune is not necessarily determinative of whether there is a legally cognizable claim of negligence.

On June 22, 1999, the trial court granted summary judgment in favor of the School, concluding that:

2. The Defendant, Metropolitan School District of Washington Township, in order to obtain summary judgment, must show that the undisputed material facts negate at least one element of the Plaintiff's claim and that it is entitled to a judgment as a matter of law. *Meyers v. Furrow Bldg. Materials*, 659 N.E.2d 1147, 1149 (Ind.Ct.App.1996); *Cowe by Cowe v. Forum Group, Inc.*, 541 N.E.2d 962, 964 (Ind.Ct.App.1989); *McCullough v. Allen*, 449 N.E.2d 1168, 1171 (Ind.Ct. App.1983).

3. Plaintiffs' claim is based upon a theory of negligence and in order to prevail on a claim of negligence Plaintiffs must prove: (1) A duty owed to the Plaintiffs by Defendant; (2) a breach of that duty

by the Defendant; and (3) injury to the Plaintiff proximately caused by that breach. *Kantz v. Elkhart County Highway Dept.*, 701 N.E.2d 608, 610 (Ind.Ct. App.1998).

4. Defendant, Metropolitan School District of Washington Township, contends that it is immune from liability pursuant to Ind.Code § 34–4–16.5–3(7), and further, that it did not owe a private duty to the Plaintiffs.

5. The Defendant, Metropolitan School District of Washington Township is a political subdivision. Ind.Code § 34–6–2–110.

6. Whether or not there is immunity under Ind.Code § 34–4–16–5 is not necessarily determinative of whether there is a legally cognizable claim of negligence. *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 283 (Ind. 1994).

7. The existence of a duty is a question of law for the Court. *Id.*

8. Plaintiffs contend that Defendant, Metropolitan School District of Washington Township, did owe a private duty to Plaintiff, Nicholas S. King, to prevent the assault from occurring.

9. School authorities do have a duty to exercise ordinary and reasonable care for the safety of children under their control; however, they are not insurers of the safety of their pupils. *Drake v. Mitchell Community Schools*, 628 N.E.2d 1231, 1234 (Ind.Ct.App.1994); *Miller v. Griesel*, 308 N.E.2d 701, 706, 261 Ind. 604 (1974).

10. In order for a Plaintiff to recover against a governmental entity (in this case a political subdivision) for negligence, he must show more than a duty owed to the public as a whole. *Benton v. City of Oakland City*, 684 N.E.2d 251, 253 (Ind.Ct.App.1997); *Benthall v. City of Evansville*, 674 N.E.2d 580, 583 (Ind. Ct.App.1996).

11. Plaintiffs, Nicholas S. King and Randall S. King, testified by affidavit that Plaintiff, Nicholas S. King had been physically harassed during his school bus rides, and Plaintiff, Randall S. King, contacted a guidance counselor at North Central High School to report the harassment; the guidance counselor advised that Plaintiff, Nicholas S. King, should find alternate means of transportation to and from school, and when asked if said Plaintiff could ride in an automobile with his sister, the counselor stated that he " . . . would be a lot safer that way . . . ."

12. However, a private duty is not created because the governmental entity may have induced reliance on protective-type services by directing or limiting the conduct of the individuals involved. *Aldridge v. Ind. Dept. Natural Resources*, supra.

13. Furthermore, the mere existence of a service, such as security, does not, standing alone, impose upon the governmental entity a duty to use such service for the benefit of a particular individual. *See e.g. Aldridge v. Ind. Dept. Natural Resources*, 694 N.E.2d 313, 317 (Ind.Ct. App.1998); *Benthall v. City of Evansville*, supra at p. 584.

14. In order to impose a private duty upon a governmental Defendant, it is required that there be: (1) An explicit assurance by the municipality, through promises of actions, that it would act on behalf of the injured party; (2) knowledge on the part of the municipality that inaction could lead to harm; *and* (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking. *Mullin v. Municipal City of South Bend*, supra at 284. (emphasis in original).

15. There is insufficient evidence to satisfy the three-pronged test for the existence of a private duty as established by *Mullin*, supra; specifically, there is a lack of any explicit assurances made by Defendant, Metropolitan School District of Washington Township (or anyone or [sic] its behalf) with re-

gard to the safety of Plaintiff, Nicholas S. King.

16. Defendant, Metropolitan School District of Washington Township, is entitled to a judgment as a matter of law.

(R. 318–322).

King argues that *Mullin* is not applicable in this case, and therefore, the trial court erred in predicating its order granting summary judgment in favor of the School upon a strict application of *Mullin*. Instead, King claims that *Serviss v. State, Department of Natural Resources*, 711 N.E.2d 95 (Ind.Ct.App.1999), contains cogent reasoning for not applying the three-part *Mullin* test to affirmative acts of negligence by a governmental entity.

In *Serviss*, the plaintiff went to an Indiana State Park to go sledding, paid a fee to enter the park, and was informed by a park employee that sledding was permitted only at a certain hill. While the plaintiff was walking along a pedestrian walkway on the side of the hill, she was struck by a sled and injured. Plaintiff filed a complaint against the State, arguing that its negligence caused her injuries. The State moved for summary judgment, which was granted by the trial court. *Id.* at 97. However, we reversed the trial court's grant of summary judgment in favor of the Department of Natural Resources, concluding that the State owed the plaintiff a private duty. *Id.* at 100. Specifically, we found that the *Mullin* three-part test for determining whether a special relationship exists between a defendant governmental entity and a plaintiff does not apply where the plaintiff alleges that the governmental entity engaged in an affirmative act of negligence that created the plaintiff's perilous situation. *Id.* at 99 (citing *Henshilwood v. Hendricks County*, 653 N.E.2d 1062 (Ind.Ct.App.1995)). Thus, the affirmative act that creates the plaintiff's peril is sufficient to establish a private duty. *Id.*

Further, we reasoned that:

In deciding whether the *Mullin* test is applicable, the appropriate question to be asked is whether the plaintiff's complaint is based upon the governmental entity's failure to act to alleviate the individual's peril [nonfeasance] or whether it is based upon governmental action that caused the plaintiff's peril [malfeasance]. If the plaintiff alleged the former, then the *Mullin* test must be applied to determine whether an otherwise public duty is converted into a private duty. However, if the plaintiff alleged the latter, then there is no need to apply the *Mullin* test because a private duty exists in the first instance. *Id.* Serviss did not claim that the State failed to adequately respond to her peril after her injury, but rather, she alleged that the State's affirmative act of negligence caused her to be injured in the first place. Specifically, Serviss alleged that the State created her peril by requiring her to sled on a certain hill and by permitting sledding without taking adequate precautions, such as providing proper supervision, warnings, and an adequate pedestrian walkway. *Id.* at 99–100. We agreed and held that the *Mullin* test was inapplicable because a public duty was not at issue and the State's affirmative act of negligence created Serviss' peril to sufficiently establishing a private duty. *Id.* at 100.

In our case, King alleges that it was the School's action that caused the assault, and therefore, we must use the *Serviss* analysis, and recognize that the *Mullin* test is not applicable. Specifically, King claims that the School created his peril by employing a security force to protect students from criminal activity in the parking lot, advising him to stop riding the school bus, and assuming the duty of actively supervising the Northeast security guards. Thus, King claims that the School's affirmative act of negligence caused the peril of his assault, and therefore, a private duty existed as a result of this affirmative act.

Although the School argues that it did not have a duty to prevent the criminal

conduct that harmed King, it concedes that the *Mullin* test does not apply to this case, however, for an entirely different reason. The School relies on *Benton v. City of Oakland City,* 721 N.E.2d 224 (Ind.1999), for its argument that it, as a governmental entity, cannot be liable for acts or omissions which might cause damage to persons where it fails to provide adequate police protection to prevent crime. In *Benton,* the plaintiff, while attempting to rescue his drowning nephew, broke his neck when he dove into shallow water at defendant Oakland City's beach. *Id.* at 225. The City filed a motion for summary judgment, contending that the City did not owe a private duty to the plaintiff, which the trial court granted. *Id.* at 226. The plaintiff appealed, and the following is our supreme court's analysis of the facts and procedural history that occurred in the Court of Appeals:

> On appeal, Jason [Plaintiff] asserted that the City owed him a duty to warn of the danger of diving in a particular area of the lake. The City contended that insofar as it had such a duty, it was a general duty owed to the public and not to Jason individually. The Court of Appeals affirmed the trial court's finding of summary judgment in favor of the City, holding that the City owed no duty to Jason. *Benton v. City of Oakland City,* 684 N.E.2d 251 (Ind.Ct.App.1997).
>
> In reaching its decision, the Court of Appeals applied a test that we employed in *Mullin v. Municipal City of South Bend,* to determine whether a city owed a duty to a victim of a house fire to dispatch an ambulance. 639 N.E.2d 278, 284 (Ind.1994) (adopting the reasoning of *City of Rome v. Jordan,* 263 Ga. 26, 426 S.E.2d 861, 863 (1993)). There we held that the city did not have a duty to dispatch an ambulance, in part because there was "no explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party." *Id.* In this case, the Court of Appeals found that the designated evidence had failed to establish

that Oakland City made any explicit assurances to Jason that it would act on his behalf "should he become imperiled." *Benton,* 684 N.E.2d at 253. "In the absence of a specific assurance," the court found that there can be no "private duty" owed to Jason and thus "no negligence on behalf of Oakland City." *Id.*

> The Court of Appeals also looked at Jason's complaint to determine whether he alleged governmental "nonfeasance" or governmental "malfeasance." This analysis was prompted by *Henshilwood v. Hendricks County,* 653 N.E.2d 1062 (Ind.Ct.App.1995), *transfer denied. Henshilwood* holds that the *Mullin* test only applies where a governmental entity is alleged to have been negligent by failing to act—nonfeasance. Conversely, *Henshilwood* says that the *Mullin* test is not to be employed with respect to an "alleged affirmative act of negligence where the [governmental] entity itself has created the plaintiff's perilous situation"—malfeasance. *Henshilwood,* 653 N.E.2d at 1067. In this case, the Court of Appeals found that Jason's complaint alleged no "affirmative acts of negligence," but instead alleged nine instances of the City's "failure to act." It held that this finding justified the application of the *Mullin* test. *Benton,* 684 N.E.2d at 253–54.

*Benton,* 721 N.E.2d at 226.

However, our supreme court vacated this court's opinion in *Benton,* and remanded the cause, holding that:

> The test enunciated in *Mullin* is only to be employed when a governmental unit is alleged to have breached a duty to provide emergency services and that a governmental unit's duty with respect to an alleged act of negligence does not depend on whether the negligence is claimed to be the result of nonfeasance or malfeasance.

*Id.* at 231. In *Benton,* our supreme court undertook a detailed reexamination of the

law with respect to the legal principles that Indiana courts have enunciated in the course of deciding tort claims filed against governmental units. In its analysis, the court recognized that the cases do not clearly define a governmental unit's "public duty" and its "private duty," and that in the wake of the decisions in *Mullin* and *Henshilwood*, it was difficult to distinguish whether a governmental unit was guilty of an affirmative act of negligence (malfeasance) or a failure to act (nonfeasance). *Benton*, 721 N.E.2d at 226. Therefore, the court returned to the framework it had established in *Campbell v. State*, 259 Ind. 55, 284 N.E.2d 733 (1972), and reaffirmed in *Benton* that "all governmental units are bound both directly and under the theory of respondeat superior, by the common law duty to use ordinary and reasonable care under the circumstances." *Benton*, 721 N.E.2d at 232–233.

In *Campbell*, our supreme court did acknowledge that some remnant of the governmental immunity must be retained, identifying three situations where governmental units would not be liable for acts or omissions which might cause damage to persons: (1) where a city or state fails to provide adequate police protection to prevent crime; (2) where a state official makes an appointment of an individual whose incompetent performance gives rise to a suit alleging negligence on the part of the state official for making such an appointment; and (3) where judicial decision-making is challenged. *Benton*, 721 N.E.2d at 227. Thus, as a result of *Campbell*, the common law general rule is that governmental units have a duty to use ordinary and reasonable care under the circumstances, except for such claims as failure to prevent crime, appointment of an incompetent official, or an incorrect judicial decision. *Id.* at 230.

However, the subsequent decisions of *Mullin* and *Henshilwood* took the *Campbell* general rule with limited exceptions and turned the issue of a governmental unit's duty into a state of confusion. As

our supreme court recognized in *Benton*, *Mullin's* bifurcation of the *Campbell* rule into a public duty-private duty test was not effective because the duty of care is so pervasive, and any additional exceptions other than those noted in *Campbell* will be rare and identified on a case-by-case basis. *Id.* Therefore, in *Benton*, our supreme court reaffirmed *Campbell* and held that *Campbell*:

> [I]s properly applied by presuming that a governmental unit is bound by the same duty of care as a non-governmental unit except where the duty alleged to have been breached is so closely akin to one of the limited exceptions (prevent crime, appoint competent officials, or make correct judicial decisions) that it should be treated as one as well. We refuse to articulate a one-size-fits-all test for determining when a duty is so closely akin to one of the limited exceptions that it should be treated as one as well.

*Benton*, 721 N.E.2d at 230. Furthermore, the court dispensed with the *Henshilwood* test that bifurcated the *Campbell* general rule into the malfeasance-nonfeasance test. Specifically, the court in *Benton*, recognized that cases subsequent to *Henshilwood* have had a difficult time distinguishing between a governmental unit's nonfeasance or malfeasance, and therefore held that a governmental unit's duty with respect to an alleged act of negligence does not depend on a determination of whether the negligence claimed is a result of nonfeasance or malfeasance. *Id.* at 231.

Nevertheless, the School argues that our supreme court in *Benton* held that the *Mullin* test only applies when the duty alleged to have been breached is the duty to dispatch emergency services, and reaffirmed the rule that a governmental entity cannot be liable for failure to provide adequate police protection to prevent a crime. Therefore, the School contends that as a result of the *Benton* holding, it did not have a common law duty to prevent the criminal conduct that harmed King. How-

ever, the ultimate holding of *Benton* is that the city was not entitled to summary judgment on the issue of its long-recognized duty to maintain a *public recreational facility in a reasonably safe manner. Serviss v. State, Dept. of Natural Resources,* 721 N.E.2d 234, 236 (Ind.1999) (emphasis supplied). Therefore, although *Benton* modified the *Mullin* test, and essentially dispensed with the *Henshilwood* test, the value gleaned from *Benton* applies only to a governmental unit's duty to maintain a public recreational facility in a reasonably safe manner.

The upshot of the previous discussion is that both the School's argument, depending upon *Benton,* and King's argument, depending on *Henshilwood,* simply fail. The School relies on *Benton* to argue that it has no duty to King to prevent the criminal conduct that caused his injuries. However, *Benton* has the limited utility of applying to cases implicating the government's duty to maintain its public recreational facilities in a reasonably safe manner, which in no stretch of the imagination applies to the case at hand. Moreover, King relies on our decision in *Serviss* for his argument that the School engaged in malfeasance, and therefore breached its duty of care owed to him. However, the portion of our decision in *Serviss* that utilized the nonfeasance-malfeasance test enunciated in *Henshilwood,* was vacated by our supreme court. *Serviss,* 721 N.E.2d 234.

The principle that remains and is applicable to this case is the general rule of *Campbell* that a governmental unit such as the School, is bound by the common law duty to use ordinary and reasonable care under the circumstances, except for such claims as failure to prevent crime. In addition, the School contends that summary judgment was proper because King's claim that the School failed to prevent a crime is a claim for which Indiana law does not impose a duty upon a governmental unit. Also, in a footnote in *Benton,* our supreme court stated that:

We continue to believe that the duty to provide emergency services implicated in *Mullin* is sufficiently similar to the "prevent crime" exception in *Campbell* to raise the possibility of immunity. And we continue to believe that the *City of Rome* test is appropriate for determining whether a governmental unit qualifies for immunity for failure to dispatch emergency services (but only for that purpose).

*Benton,* 721 N.E.2d at 233 n. 12.

■ Therefore, because *Benton* modified the *Mullin* test so that it no longer applies to our case, we must now determine whether the "prevent crime" immunity as enunciated in *Campbell* applies to the School's acts in order to affirm summary judgment in favor of the School. Because the trial court seemed to base its summary judgment order in favor of the School upon the rationale that the School did not owe King a private duty pursuant to the *Mullin* test, we must instead analyze the existence or nonexistence of the School's duty pursuant to the *Campbell* holding. Moreover, our supreme court has held that in determining whether a defendant owed a duty to the plaintiff, we must consider and balance three factors: 1) the relationship between the parties, 2) the reasonable foreseeability of the type of harm to the type of plaintiff at issue, and 3) the public policy promoted by recognizing an enforceable duty. *Webb,* 575 N.E.2d at 995; *Perdue Farms, Inc. v. Pryor,* 683 N.E.2d 239, 241 (Ind.1997). Therefore, we analyze the existence of the School's duty utilizing the framework of *Campbell* while balancing the three factors from *Webb.*

While the School concedes that it owed a duty to exercise reasonable care and supervision for the safety of the children under its control, it argues that summary judgment was proper because the evidence is undisputed that it had no notice that King was in danger of being assaulted by the students who did so. Therefore, the School contends that without the requisite advance notice of an unusual or unreason-

able risk, as enunciated in *Miller*, it cannot be liable for any alleged breach of its duty of care to its students. Specifically, the School claims that there is no evidence that King had a relationship or any contact with the students who assaulted him. Further, the School was unaware of the students' troublesome or mischievous nature. Therefore, the incident did not involve a dangerous instrumentality or condition that the School could have foreseen in order for it to be on advance notice to hold it liable.

## A. *Foreseeability*

■ An analysis of the foreseeability component of duty involves two considerations: whether the injured person was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable. *Indiana Bell Telephone Co. v. Maynard*, 705 N.E.2d 513, 514 (Ind.Ct. App.1999), *trans. denied*, 726 N.E.2d 310 (Ind.1999). "Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. The duty of reasonable care is not owed to the world at large but is limited to those who might reasonably be foreseen as being subject to injury by the breach of the duty." *Ebbinghouse v. FirstFleet, Inc.*, 693 N.E.2d 644, 648 (Ind.Ct.App.1998), *trans. denied*, 706 N.E.2d 171 (Ind.1998). "Such foreseeability does not mean that the precise hazard or exact consequences should have been foreseen, but neither does it encompass anything which might occur." *Indiana Limestone Co. v. Staggs*, 672 N.E.2d 1377, 1382 (Ind.Ct.App.1996), *trans. denied*, 726 N.E.2d 306 (Ind.1999). In *Goldsberry v. Grubbs*, 672 N.E.2d 475 (Ind.Ct.App.1996), *trans. denied*, 726 N.E.2d 306 (Ind.1999), we distinguished between the foreseeability component of the duty analysis and the foreseeability component of proximate cause:

> Foreseeability in the context of proximate cause involves evaluating the particular circumstances of an incident after the incident occurs .... [and] when de-

termining proximate cause, foreseeability is determined based on hindsight, and accounts for the circumstances that actually occurred.

By logical deduction, the foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a lesser inquiry; if it was the same or a higher inquiry it would eviscerate the proximate cause element of negligence altogether. If one were required to meet the same or a higher burden of proving foreseeability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause. . Additionally, proximate cause is normally a factual question for the jury, while duty is usually a legal question for the court. As a result, the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence .... to a great extent, duties are defined by the foreseeability of relevant harms.

*Id.* at 479.

■ However, the School looks to the facts of the particular accident in which King was injured to find that no duty existed. Specifically, the School concedes that it did have a duty to supervise the children in general, but argues that under *Benton* and *Campbell*, it did not have a duty to prevent crime. Therefore, following the School's argument, if the particular accident in which a student is injured rises to the level of a crime, then the School is immune from liability because it has no duty to prevent crime. On the contrary, if King's injuries were not the result of a crime, then the School has a duty to protect King from this type of injury because it did not rise to the level of a crime. This analysis contemplates the School's duty af-

ter the injury to King has occurred, rather than determining whether a duty exists before analyzing the particular facts and circumstances surrounding the injury. A duty must either exist or not exist independent and irrelevant of the particular facts involved. For example, the School's duty to protect King must have existed before the first fist was ever raised to batter King, and the School was not relieved of this duty merely because King's injuries were the result of a crime. The School has a duty to protect children, and therefore, this duty exists whether this protection involves preventing injuries as a result of a crime or preventing injuries unrelated to crime. Therefore, we find that the principle of *Campbell* that a governmental unit such as the School, is bound by the common law duty to use ordinary and reasonable care under the circumstances, except for such claims as failure to prevent crime, contemplates the analysis of the particular facts after the injury has occurred in order to determine whether a duty existed. As we stated in *Goldsberry*:

> [w]e remain convinced that while the facts of a particular occurrence are relevant when considering whether a breach of a duty occurred and whether that breach was the proximate cause of the plaintiff's injuries, such facts are simply not relevant to the determination of whether a duty existed. To look to the facts of a particular occurrence when deciding the duty question would subsume the entire law of negligence, i.e., duty, breach, and proximate cause, into the duty question.

*Goldsberry*, 672 N.E.2d at 479.

■ Looking at the type of plaintiff and harm involved in the present case, we conclude that both were foreseeable within the duty context. The School was aware of several instances of criminal activity that occurred between students during school hours, therefore it hired a private security company to be observant of any criminal activity that may occur in the parking lots. Thus, the School was aware of the hazardous condition in the parking lot and the foreseeability of harm to the students. Therefore, we believe that the proper conclusion is that regardless of the facts that actually occur, and regardless of whether a student's injury was a result of a crime, it was foreseeable that students could injure themselves or be injured by others during school hours. Thus, the foreseeability factor weighs in favor of imposing a duty.

## B. *Relationship*

■ In *Miller v. Griesel*, our supreme court recognized that that Indiana common law recognizes a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under their authority. 261 Ind. 604, 308 N.E.2d 701 (1974). Specifically, the court noted that

> schools have such a reasponsibility [sic] and that the *relationship* of school pupils and school authorities should call into play the well recognized duty in tort law that persons entrusted with children, or others whose characteristics make it likely that they may do somewhat unreasonable things, have a special responsibility recognized by the common law to supervise their charges.

*Id.* at 706 (emphasis supplied).

However, our supreme court emphasized that schools are not intended to be the insurers of the safety of their students, nor are they strictly liable for any injuries that may occur to them, and the duty imposed by this relationship is a practical recognition by the law that school officials are required to exercise due care in the supervision of their students. *Id.* at 706. Nevertheless, the court also recognized that while schools are not the insurers of their pupils' safety, they are not immune from liability. *Id.* In that case, the plaintiff, a fifth grade student, brought an action alleging negligence against his teacher, the principal, and his school as a result of injuries he sustained during recess period

at the school. *Id.* at 703. During lunchtime, the children were required to eat in classrooms, but for the recess period immediately following the lunch period, the children could either go outside or remain in the classrooms. *Id.* The teachers were required to remain in their respective classrooms with the children during the lunch period, but were allowed to leave the classroom during the recess period if the teacher could get someone to look in on the children remaining in their respective classroom. *Id.* On the day plaintiff was injured, the teacher remained in the classroom for the lunch period, but left the room during the recess period. *Id.* However, there was testimony indicating that the teacher had requested another teacher to periodically check on the ten fifth grade children remaining in the classroom, and that the other teacher had checked on the children. *Id.* at 704. During the teacher's absence, one of the students produced a detonator cap that exploded, seriously injuring the plaintiff. *Id.* The trial court granted summary judgment in favor of the defendants, and our supreme court affirmed the trial court's decision. *Id.* at 703. The court reasoned that:

> Since the plaintiff failed to show the actual length of time the students were left unattended or that the activity in which they were engaged was particularly hazardous or that any of the students in the room were of a troublesome, mischievous nature we believe that the trial court correctly granted the TR. 50 motion.... While the law recognizes such a duty between these parties the plaintiffs have failed in their evidentiary duty to present a prima facie case of a breach of that duty and we therefore affirm.

*Id.* at 707.

In *Miller,* our supreme court recognized the existence of a duty between the school and the students, but found that the plaintiff failed to satisfy the evidentiary burden to prove that the school breached this duty. However, the case at hand does not contemplate whether the School breached its duty to King, but instead, whether a duty even existed for the School to breach. Therefore, we also recognize that a duty existed as a result of the relationship between the School and King, and it is unnecessary for us to determine whether King satisfied his evidentiary duty to present a prima facie case of a breach of that duty. Further, the court in *Miller* recognized that, "it is not a harsh burden to require school authorities in *some instances* to anticipate and guard against conduct of children by which they may harm themselves or others." *Id.* at 706–707 (emphasis supplied). We believe that the case at hand is such an instance because the School embarked upon performance of its duty to supervise the safety of its students by hiring and deploying a security guard force outside the school building. Specifically, the School was aware of prior criminal activity at the school, it entered into a Security Agreement with Northeast to provide security guards, and the School and Northeast had undertaken performance of this responsibility pursuant to the agreement at the time King was assaulted. We conclude, like the court in *Miller,* that the School, entrusted with the supervision of King as one of its students, had a relationship with King, which was sufficient to impose a duty.

### C. *Public Policy*

The final factor to be balanced in determining the existence of a duty is the question of public policy concerns. In *Miller,* our supreme court stated: "It should be emphasized ... that schools are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them." *Miller,* 308 N.E.2d at 706. Nevertheless, our supreme court also held that the duty imposed by the relationship between a school and its pupils is a practical recognition by the law that school officials are required to exercise due care in the supervision of their students. *Id.* In this case, public policy is not offended by imposing a

duty on schools that are aware of danger at the school, hire a security force to protect its pupils from danger, and the pupils are mandated to attend school by statute.

First, pursuant to Ind.Code § 20–8.1–3–17, a student who is at least seven (7) years of age but less than sixteen (16) years of age is bound by the requirements of compulsory school attendance and may not withdraw from school before graduation. At the time King was attacked, he was fourteen (14) years of age, and therefore required to attend school.

Second, the record reveals that the School was aware of several instances of crime and violent behavior by its pupils during school hours. Therefore, the School spent $6,375.00 bi-weekly to hire a security force to observe any criminal activity that may occur in the school parking lots and the exterior of the school. Although the contract with the security force does not state that the security company was to perform any act once it observed any criminal activity, we cannot imagine this was the intention of the contract. Plainly, the security company was hired and paid to not only observe criminal activity, but to do something once it observed criminal activity.

Finally, in this day and age of violence in our schools where children are mandated to attend, the fact that a school attempts to combat criminal and/or violent behavior by hiring a security force to protect its students cannot relieve the school of its duty to exercise due care in the supervision of its students. If children are required to attend school, and the school is aware of its own dangerous nature, then the children must be protected from danger. Further, if a security force is hired to combat this danger, then the school may not shirk its obligation to protect the children from danger by hiding behind its affirmative act of hiring a security force or its governmental immunity.

We conclude that the three components of duty – the parties' relationship, the foreseeability of harm, and public policy concerns – all dictate in favor of imposing a common law duty on the School under the circumstances of this case.

## II. *Northeast*

■ Next, King argues that the trial court erred in granting summary judgment in favor of Northeast. Specifically, King contends that he was an intended third party beneficiary to the contract between the School and Northeast, and therefore, Northeast owed him a duty. Further, King argues that Northeast also assumed a duty of care through its actions of posting a security guard near the west parking lot with instructions to be observant of criminal activity.

On April 5, 1999, the trial court granted summary judgment in favor of Northeast, concluding that:

2. Plaintiffs contend that Defendant, Northeast Security, Inc., owed a duty to Plaintiff, Nicholas S. King, to prevent obvious and impending acts of violence from occurring and to attempt the rescue of anyone who was the obvious victim of an act of violence, and as said Defendant breached said duty by failing to have security officers on duty in the parking lot.

3. Plaintiffs' contention is that the duty owed by Defendant, Northeast Security, Inc. to Plaintiff, Nicholas S. King arose from the agreement by and between said Defendant, Metropolitan School District of Washington Township; thus Plaintiff, Nicholas S. King, would be a third-party beneficiary of said contract.

4. The status of a third-party beneficiary may be used as a basis of duty in a negligence action. *Emmons v. Brown*, 600 N.E.2d 133, 134 (Ind.Ct.App.1992).

5. A third-party beneficiary contract is one in which the promisor has a legal interest in performance in favor of the third party and which the performance of the terms of the contract between two parties must necessarily result in a direct benefit to a third party which was so intended by the parties. *In re Estate*

*of Von Wendesse,* 618 N.E.2d 1332, 1337 (Ind.Ct.App.1993).

6. A third-party beneficiary contract exists when (1) There is a clear intent to benefit a third party; (2) the imposition of a duty on one of the contracting parties in favor of the third party; and (3) the rendering of a direct benefit to the third party. *Calumet Nat. Bank v. American Tel. & Tel. Co.,* 654 N.E.2d 816, 821 (Ind.Ct.App.1995).

7. Among the foregoing three factors, the intent of the contracting parties to benefit the third party is the controlling factor. *National Bd. Of Examiners for Osteopathic Physicians and Surgeons, Inc. v. American Osteopathic Ass'n.,* 645 N.E.2d 608, 618 (Ind.Ct.App.1994).

8. Such an intention may be demonstrated by specifically naming the third party, or by other evidence. *Id.*

9. The intent necessary to the third party's right to sue is not a desire of purpose to confer a particular benefit upon the third party nor a desire to advance his interest or promote his welfare, but an intent that the promising party or parties shall assume a direct obligation to him. *Id.*

10. The Defendant, Northeast Security, Inc., in order to obtain summary judgment, must show that the undisputed material facts negate at least one element of the Plaintiffs' claim and that its is entitled to a judgment as a matter of law. *Meyers v. Furrow Bldg. Materials,* 659 N.E.2d 1147, 1149 (Ind.Ct.App. 1996); *Cowe by Cowe v. Forum Group, Inc.,* 541 N.E.2d 962, 964 (Ind.Ct.App. 1989); *McCullough v. Allen,* 449 N.E.2d 1168, 1171 (Ind.Ct.App.1983).

11. Defendant, Northeast Security, Inc., contends that it did not owe any duty to the Plaintiffs by reason of the contract entered into by Metropolitan School District of Washington Township and Northeast Security, Inc.

12. The Defendant, Metropolitan School District of Washington Township is a political subdivision. Ind.Code § 34–6–2–110.

13. One who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to liability to a member of the public for consequential damages resulting from performance or failure to perform unless the terms of the promise provide for such liability or the promisee is subject to liability to the member of the public and a direct action against the promisor is consistent with the terms of the contract. Restatement (Second) of Contracts § 313 (1979).

14. A direct action against the Defendant, Northeast Security, Inc., as promisor is not consistent with the terms of the contract entered into by Metropolitan School District of Washington Township and Northeast Security, Inc.

15. The contract that is entered into between the Defendant, School Corporation, a political subdivision, and Defendant, Northeast Security, Inc. was, at most, for the benefit of the students of North Central High School as a whole, and not a particularized obligation as to any single student of the school; therefore, an individual student, such as Plaintiff Nicholas S. King, was not a third-party beneficiary of the contract and it did not create a duty running to him from Defendant, Northeast Security, Inc. *Ayres v. Indian Heights Volunteer Fire Dept.,* 493 N.E.2d 1229, 1235 (Ind.1986).

(R. 143–147).

The Security Agreement between Northeast and the School provided in relevant part:

### General Description of Security Services to be performed:

Provide exterior patrol at checkpoints for all North Central High School buildings by the means of three vehicle patrols occupied by three Marion County Special Deputies provided and employed by Northeast Security. These officers are trained personnel and understand

the procedures of patrol. They will also be responsible for insuring all personnel that enter the premise [sic] are possessing the proper identification. They are to be observant of any criminal activity which may occur in the parking lots and to the exterior of the building.

Coverage Periods of Security Service:

All days that school is officially in session, estimated 181 school days per year. On most occasions this will be Monday–Friday.

3 Special Deputies outside 7:00am – 3:30pm

***Client Fees and Obligations*** :

Client will pay Northeast Security $6375.00 bi-weekly.

(R. 82–83) (emphasis in original).

King argues that he was a third-party beneficiary of the Security Agreement between Northeast and the School because:

> The Security Agreement was obviously intended to benefit parties who might be subject to "criminal activity" occurring in the west parking lot of North Central High School. The Security Agreement did impose a duty on Northeast to provide security services which, if performed reasonably and responsibly, would have provided protection to Nick King and other North Central students entering the parking lot. Finally, the fact that the School District was willing to pay $6,372 [sic] of taxpayers' money every two weeks to Northeast for the provision of security guards outside the building and next to the parking lot signifies an intent to convey a direct benefit to Nick King and the other students who might be subject to criminal activity.

(Appellant's Brief, p. 22).

Northeast argues that the trial court properly granted summary judgment in its favor because King was not a third-party beneficiary of the contract. Moreover, Northeast contends that King failed to make any argument as to why the trial court's decision was flawed. Specifically, Northeast argues that King does not claim that he was a party to the contract or was in privity with the School or Northeast, as required for third-party beneficiary status in Indiana. Further, neither King nor any other student or students as a class are named in the contract, the Security Agreement addresses only the rights and obligations of Northeast and the School, and it contains no provisions demonstrating an intent to benefit anyone other than the School and Northeast. Next, Northeast argues that King's general claim that the Security Agreement was obviously intended to benefit parties who might be subject to criminal activity, is unsupported and does not meet the requirements necessary to establish a clear intent to benefit a third party. In addition, Northeast claims that evidence of the School's payment to Northeast under the contract is not indicative of an intent to convey a direct benefit to King. Finally, Northeast claims that a third party does not become a beneficiary of the contract as a result of an incidental benefit from the performance of the promisor. Thus, the School contends that by King simply benefiting from Northeast's performance of its responsibilities under the contract, the requisite clear intent to benefit a third party is not established.

King also argues that Northeast also assumed a duty as a result of its actions. Specifically, King contends that by Northeast posting a security guard next to the west parking lot to be observant for criminal activity established a specific duty to protect students entering the parking lot. For his claim, King relies on our decision in *American Legion Pioneer Post v. Christon*, 712 N.E.2d 532 (Ind.Ct.App.1999), *trans. denied*. In that case, American Legion rented a portion of its building to a sorority on an evening the sorority held a party attended by Christon. American Legion hired security guards to patrol only the parking lots and outside premises during the party. At some point during the party, Christon was shot. Christon sued both American Legion and the security

company for his damages resulting from their negligence. On appeal, the security company raised the issue of whether it assumed a duty to protect Christon from the criminal acts of a third party while providing security services for American Legion. *Id.* at 534. In *Christon*, we held that the "duty to anticipate and take steps to protect against a criminal act arises only when the facts of a particular case make it reasonably foreseeable that a criminal act is likely to occur." *Id.* Specifically, we found that the designated evidence was sufficient to raise genuine issues of material fact as to whether the security company, through the affirmative actions of its employee, assumed a duty to protect the people in attendance at the party. *Id.* at 537. In that case, Hood, one of the security guards at the party, pursuant to the request of the sorority's president, agreed to watch the door and entrance to the party. *Id.* at 536. While he watched the door, Hood was asked by a sorority member to escort a man from the party because the man had been in an argument with the sorority member, and that he had a handgun. *Id.* The sorority member then instructed Hood to not allow the man to return to the party so long as he had a weapon on his person. *Id.* Nevertheless, Hood testified that the man returned to the party, he patted him down but did not have a weapon on his person. *Id.* at 537. However, shots were fired inside the party. Therefore, we held that the security company, through the actions of Hood, assumed a duty to protect the people at the party when Hood agreed to prevent the man from returning to the party with a weapon. *Id.*

Based upon our holding in that case, King argues that Northeast assumed and undertook to perform the specific duty of observing the school parking lots for criminal activity, and therefore, the totality of the circumstances establish that Northeast assumed a duty of care to protect him from criminal activity in the parking lot.

On the other hand, Northeast argues that the *Christon* case is not applicable to our case because, there is no designated evidence indicating any specific promises of protection made by Northeast to anyone, including King specifically. Furthermore, there is no evidence that Northeast was aware of any weapons, altercations or verbal threats between King and the students who assaulted him. Therefore, Northeast argues that the assault on King was not reasonably foreseeable.

In addition, Northeast contends that:

[T]he undisputed material facts of the present case do not demonstrate any affirmative conduct by Northeast to support an assumption of duty toward Nick King, that Nick King relied upon Northeast's alleged nonfeasance, or that there was a special relationship between Nick King and Northeast so as to impose a duty upon Northeast toward Nick King.

(Appellee's Brief, p. 22).

We agree with Northeast and find that Northeast did not owe King a duty as a third party beneficiary to the contract entered into between the School and Northeast. Although the contract was not specifically drafted to benefit anyone, King was not a third party beneficiary to the contract. Specifically, the contract did not reflect a clear intent to benefit King, there was no imposition of a duty on Northeast in favor of King as an individual, and there was no direct benefit rendered to King. *See Calumet Nat. Bank v. American Tel. & Tel. Co.,* 654 N.E.2d 816, 821 (Ind.Ct. App.1995). Therefore, because we find that the contract between the School and Northeast was not drafted with enough specificity to intend King to be a third party beneficiary of the contract, Northeast did not owe King a common law duty to protect him and prevent his harm.

## CONCLUSION

Based on the foregoing, the trial court improperly granted summary judgment in favor of the School. Therefore, because we find that the School did owe King a

duty of care, we reverse the trial court's summary judgment order and remand this cause for further proceedings to determine whether the School was negligent. However, we affirm the trial court's summary judgment order in favor of Northeast because the contract between the School and Northeast did not create a duty to protect King as a third party beneficiary to the contract.

Affirmed in part, reversed in part and remanded for further proceedings.

KIRSCH, J., concurs.

BAKER, J., concurs and dissents with opinion.

**BAKER, Judge, concurring and dissenting.**

I agree with my colleagues that the entry of summary judgment in favor of Northeast Security was proper for the reason that there is not enough specificity in the contract to make King a third party beneficiary. However, I cannot agree that the trial court erred in granting summary judgment for the school district.

As the majority correctly observes, our supreme court in *Benton v. City of Oakland City,* 721 N.E.2d 224 (Ind.1999) reaffirmed the framework that was established in *Campbell v. State,* 259 Ind. 55, 284 N.E.2d 733 (1972). *Op.* at 831–832. Specifically, the *Benton* court noted that governmental units have a duty to use ordinary and reasonable care under the circumstances, except for such claims as failure to prevent crime, appointment of an incompetent official, or an incorrect judicial decision. *Benton,* 721 N.E.2d at 230.

It is apparent to me that the gravamen of King's claim is that he was injured in light of the school corporation's failure to have adequate safety personnel in the parking lot when he was injured. Thus, the *Campbell* exception regarding a governmental unit's failure to prevent crime is triggered here. I acknowledge that the court must typically balance the three factors enunciated in *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991), which include the relationship between the parties, the foreseeability of harm to the injured person and public policy concerns, to determine whether a duty exists. Moreover, I do not disagree that considering these factors with respect to the circumstances before us might very well impose liability on the part of the school system. However, unless and until our supreme court abandons the *Campbell* exception that is relevant here, it is my view that summary judgment was properly entered for the school system. Thus, I would affirm the judgment in all respects.